**AIRFLOW HOUSTON, INC., Appellant,**

v.

**John H. THERIOT, Appellee.**

**No. 01–92–00090–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 25, 1993.

David Kirkendall, Kirkendall & Collins, Houston, for appellant.

D. Michael Hamm, Houston, for appellee.

Before OLIVER–PARROTT, WILSON and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked to determine if the trial court erred when it found AirFlow Houston, Inc. was responsible for the debt of two other corporations. We find it did not and affirm.

### Fact summary

John H. Theriot sued three AirFlow corporations: AirFlow, Inc. d/b/a AirFlow Service, Inc. (Service), the parent corporation of AirFlow Engineering, Inc. (Engineering), and a third corporation, AirFlow Houston, Inc. (AHI). Service and Engineering were started by H.M. McLeod, Jr., and AHI was started by a friend of McLeod's at his insistence.

Service is the parent corporation of Engineering. Service repaired and maintained existing air conditioning and heating systems. Engineering provided mechanical contracting services and specialized in the manufacture and installation of air conditioning and heating systems, primarily in new construction projects. Both Service and Engineering failed to pay franchise taxes, and their certificates of authority to do business were terminated by the Texas secretary of state on January 18, 1988 after almost 20 years of business. McLeod was chairman of the board and the only shareholder of Service, and he was president, director, and the sole shareholder of Engineering. Pieter Huysman was president of Service. The third AirFlow company, AHI, was formed on October 24, 1986.

The testimony showed that the employees of Service and Engineering were interchangeable when necessary for a particular job. Service used the crane trucks belonging to Engineering. Huysman, who was president of Service, ran Engineering; McLeod ran Service and was Huysman's boss at Engineering. The two companies served most of the same customers.

Service and Engineering owed RepublicBank approximately $130,000. The bank held first liens on all the inventory, receivables, equipment, fixtures, and furniture of both companies. On February 5, 1986, John H. Theriot loaned Engineering $100,000 in return for a promissory note. Engineering gave Theriot a first lien on specific unencumbered inventory consisting of air distribution devices and piping materials valued at $15,000 and a second lien on its accounts receivable and inventory.

Engineering's cash flow problems worsened, and it was unable to pay the bank or Theriot. In October of 1986, RepublicBank informed Service and Engineering it would not permit unauthorized expenditures of the accounts receivable of the two corporations, and they ceased business. McLeod and Huysman agreed to liquidate the assets of Service and Engineering to reduce the debt owed the bank. On November 21, 1986, McLeod voluntarily relinquished all remaining assets of Service and Engineering to the bank.

In the two weeks before the bank took over the two companies, McLeod took a lot of things out of the office, such as computer disks, invoices, and current and historic records of the corporations. The bank took over the two corporations on November 22, 1986.

During the liquidation process, McLeod convinced some of his acquaintances to start a new company, Airflow Houston, Inc. (AHI), which was incorporated on October 24, 1986. W. Ward Jones agreed to let AHI run from the offices of his company. In return, Jones bought all the outstanding stock in AHI for $300. McLeod did not take any tangible assets to AHI, but he did take intangibles, such as the logo, the name, the telephone number, good will, and possibly the client list. In 1990, McLeod was given 50 percent of the stock.

Theriot sued Engineering, Services, and AHI for recovery of the promissory note. He alleged: (1) Engineering defaulted by failing to make the scheduled payments

under the note; (2) Service was liable for all amounts due under the note; (3) certain assets owned by Engineering or Service were transferred to AHI; and (4) such transfers constituted fraudulent transfers. Theriot claimed AHI should be held liable for the full amount of his claim against Engineering. Engineering and Service did not file answers to the original petition, and a default judgment was rendered against them. They did not participate in this appeal.

### 1. Corporate identities

In point of error two, AHI argues the trial court erred in disregarding the separate corporate identities of Service, Engineering, and AHI.

██ In an appeal from a bench trial, findings of fact have the same weight as a jury's verdict upon special issues. *Gosch v. B & D Shrimp, Inc.*, 830 S.W.2d 652, 654 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Findings of fact are binding on this Court, only if supported by evidence of probative force. *Id.* Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Id.* at 655; *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

██ In reviewing factual insufficiency points, once we examine all of the evidence relating to a finding, we can only set aside the finding if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Gosch*, 830 S.W.2d at 655. We cannot substitute our opinion for that of the trier of fact to determine if we would reach a different conclusion. *Gosch*, 830 S.W.2d at 655.

The trial court entered the following conclusion of law:

> the secret incorporation of [AHI] by McLeod and the subsequent appropriation of substantially all of the essential business assets of [Engineering] and [Service] by [AHI] without assuming the liabilities of [Engineering] and [Service]

constitute a sham to perpetuate a fraud upon [Theriot] that is based on an actual as well as constructive fraud and justifies equitable disregard of the corporate separateness of the three entities and imposing liability upon [AHI] as a successor to [Engineering] and [Service].

This conclusion of law is part finding of fact and part conclusion of law. "Whether or not to disregard the corporate fiction is a question of fact and common sense. The court must weigh the facts and consequences in each case carefully, and common sense and justice must determine its decision." *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex.1986). We consider the challenge to be one of the sufficiency of the evidence to support the fact finding.

██ In determining whether to ignore the separate existence of corporations, the courts must consider whether the two corporations have been maintained as separate entities. *Superior Derrick Services, Inc. v. Anderson*, 831 S.W.2d 868, 874 (Tex. App.—Houston [14th Dist.] 1992, writ denied). The court may consider the following factors:

> (1) common employees; (2) common offices; (3) centralized accounting; (4) payment by one corporation of wages of the other corporation's employees; (5) common business name; (6) services rendered by employees of corporation on behalf of the other corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations.

*Id.* The trial court, in its findings of fact, concluded that by their conduct, Service and Engineering disregarded their separate corporate identities.

██ Engineering was a wholly-owned subsidiary of Service, and both borrowed and reaped the benefits of the $100,000 promissory note from Theriot. One check from the loan proceeds was paid to Service, and three checks were issued to Engineering. Engineering installed heating and air conditioning in new buildings, and Service repaired existing heat and air conditioning systems. Both companies had the same

office and used the same phone number and the same logo. McLeod was the chairman of the board and sole shareholder of Service and the president, director, and sole shareholder of Engineering. The companies participated in a joint check payment arrangement with their major creditors. It is clear they have similar business names and similar services rendered by their employees.

We find this is sufficient evidence to support the trial court's finding and conclusion that Service and Engineering ignored their separate corporate status, and we overrule the factual insufficiency point on those two corporations.

We now determine if the record supports the trial court's finding disregarding the separate corporate identities between AHI, Service, and Engineering. The trial court based its decision that AHI was not a separate corporation on its findings that McLeod formed AHI as a secret corporation, and AHI appropriated substantially all of the essential business assets of Service and Engineering without assuming their liabilities. The trial court found these actions were a sham to defraud Theriot. To resolve this issue, we must respond to point of error one.

## 2. Fraudulent transfer

To disregard the corporate fiction between AHI, Service, and Engineering, it is not necessary for Theriot to prove actual fraud; it is sufficient for Theriot to prove constructive fraud. *Castleberry*, 721 S.W.2d at 272–73. The Supreme Court distinguished constructive from actual fraud in *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964), when it said:

> Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespec-

tive of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest.

In point of error one, AHI argues there was insufficient evidence for the court to conclude that either of the AirFlow entities fraudulently transferred assets to AHI. Because we have already found there is sufficient evidence to disregard the corporate distinctions between Service and Engineering, we need only find that one of those corporations fraudulently transferred assets to AHI.

### a. Intangible assets

■ AHI claims intangible assets are not a transfer of real or personal property under the Fraudulent Transfer Act.[1] It asserts for a fraudulent transfer to occur, the property must be the type subject to an execution, and the execution must be sufficient to pay existing debts. *Taylor v. Callahan*, 83 S.W.2d 1072, 1074–75 (Tex. App.—Austin 1934, writ dism'd). AHI's reliance on *Taylor* is misplaced, because in *Taylor*, the court was using an earlier version of TEX.BUS. & COM.CODE ANN. § 24.02. Here, the version in effect did not require the property be subject to an execution before it could be transferred.

■ In this case, the trial court found AHI used the same phone number for AHI as was used for Engineering and Service. AHI explains this was because the phone number was owned by McLeod, not either of the two corporations. The trial court also found AHI used the same logo as Service and Engineering. AHI argues a logo is not an asset.

Furthermore, the trial court determined AHI used many of the same clients as Engineering and Service, and this constituted an asset, because McLeod had taken

---

1. This case is governed by the 1967 version of TEX.BUS. & COM.CODE ANN. § 24.02(a), which provided:

 A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

 (1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or
 (2) defraud any creditor, purchaser, or other interested person of that to which he is or may become entitled.

 Act of 1967, 60th Leg., ch. 785 § 1, *amended by* Act of Sept. 1, 1987, 70th Leg., ch. 1004 § 1.

many records, invoices, other historical papers, and computer disks from Engineering and Service. AHI argues the client phone numbers were obtained from the phone book, and no client list existed. Theriot says at least 17 client companies from the previous client companies were used by AHI.

 The trial court considered the transfer of assets between Service and Engineering to AHI to be a transfer of the good will of the companies. The question of whether good will does or does not exist is one of fact. *Taormina v. Culicchia*, 355 S.W.2d 569, 575 (Tex.App.—El Paso 1962, writ ref'd n.r.e.). Good will is property and may be sold, just like any other property. *Texas & P. Ry. Co. v. Mercer*, 127 Tex. 220, 90 S.W.2d 557, 560 (1936); *Taormina*, 355 S.W.2d at 575. Although an intangible, good will is an integral part of the business, the same as the physical assets of the business. *Mercer*, 90 S.W.2d at 560; *Taormina*, 355 S.W.2d at 573. Good will includes the advantages accruing to a business on account of its name, location, reputation, and success. *Taormina*, 355 S.W.2d at 574. Good will of a business can be transferred apart from any tangible assets. *Falstaff Beer, Inc. v. C.I.R.*, 322 F.2d 744, 746 (5th Cir.1963).

The trial court's finding that the intangible assets and good will, constituting the essential business assets, were transferred is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

**b. Defraud, hinder, or delay**

 AHI also argues there was insufficient evidence to show any transfer of assets from Service or Engineering was done to defraud, hinder, or delay any creditor, purchaser, or interested person, from obtaining that to which he is or may become entitled.

The trial court found McLeod and AHI tried to conceal the transfer of substantially all the essential business assets of Service and Engineering by causing AHI to be incorporated by personal friends. The record contains ample evidence to support the trial court's finding. There was testimony

a friend of McLeod's was given $300 to incorporate AHI. McLeod does not deny this statement.

AHI's Attorney: You have testified that the organizers and incorporators were friends?

McLeod: Yes.

AHI's Attorney: So, you don't deny that you went to these people and asked them to create a new corporate entity called AirFlow Houston, Inc.?

McLeod: Yes.

AHI's Attorney: And, why didn't you subscribe?

McLeod: I knew I had a huge contingent liability hanging over my head, and I stood a chance of losing everything. And, I didn't know when I would have to declare personal bankruptcy if I would, and I didn't want to lose again. I needed a job, and this was a way for me to gain employment.

McLeod contends there was no attempt to hide, and the incorporation of AHI was done by others so McLeod could remain employed in the industry. He testified he had no agreement to ever become a shareholder in AHI. He was, however, the president and controlling shareholder of AHI by the time of trial.

The trial court's finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. We hold there was sufficient evidence to find McLeod attempted to hide his participation in AHI as a way to defraud his creditors.

**c. Judgment amount**

 AHI argues, if Service and Engineering fraudulently transferred assets to AHI, the trial court erred in entering a judgment for the full amount of Theriot's claim against AHI. AHI contends Theriot's only remedy is the return of, and levy upon, the specific assets transferred to AHI.

Under section 24.008, the statute states the remedies of creditors in an action for relief may obtain:

(1) avoidance of transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

TEX.BUS. & COM.CODE ANN. § 24.008.[2] The last option is quite broad. The amount of the note is not in question. All parties agree Theriot loaned Engineering $100,000 at an interest rate of 10 percent per annum with the interest and principal payable in monthly installments. The parties stipulated the unpaid portion was $111,190.57.

The trial court could award the amount under the promissory note, because it qualifies as "any other relief the circumstances require." A suit under section 24.008 pursues the debtor's fraudulently transferred

property and does not result in any personal liability on the part of those responsible for the transfer. *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1272 (5th Cir.1983). Here, there was no liability imposed on McLeod, personally. AHI is being held liable for the debts of the defunct corporations, Service and Engineering.

We hold the trial court's finding is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Gosch*, 830 S.W.2d at 655.

We overrule point of error one.

### 3. Bulk Sales Act

In point of error three, AHI argues the trial court erred in holding any part of the Texas Bulk Sales Act applies to this case. TEX.BUS. & COM.CODE ANN. § 6.101 et seq. (Vernon 1968). AHI contends the trial court relied on the Texas Bulk Transfer Act because, in its findings of fact, it refers to transfers of "essentially" or "substantially" all of the essential business assets. Nothing in the record supports AHI's conclusion that the Bulk Sales Act played a role in the trial court's decision.

We overrule point of error three and affirm the judgment.

---

**2.** Section 24.008 was amended in 1987 and became effective on September 1, 1987. This case is governed by the previous version of TEX.BUS. & COM.CODE ANN. § 24.008. Act of 1967, 60th Leg., ch. 785 § 1, *amended by* Act of Sept. 1, 1987, 70th Leg., ch. 1004 § 1.