Bernard S. **HERBAGE** and Braxie Ann Herbage, Appellants,

v.

Elizabeth S. **SNODDY,** James E. Snoddy, Jr., and Sara Peterson, Appellees.

No. 01–90–01152–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 30, 1993.

Rehearing Denied Nov. 11, 1993.

Russell H. Neel, Jr., Houston, for appellants.

Greg J. Dalton, Hoover, Bax & Shearer, Houston, for appellees.

Before DUGGAN, WILSON and MIRABAL, JJ.

## OPINION

WILSON, Justice.

This appeal arises from a dispute between parties to an earnest money contract. After the transaction failed to close, members of the Snoddy family,[1] sellers of the realty and appellees in this Court, filed suit in the trial court against Mr. and Mrs. Herbage, buyers and appellants. A bench trial resulted in judgment favoring the Snoddys (sellers) for the earnest money plus interest and attorney's fees. We reverse and render judgment for the Herbages (buyers).

The trial court made the following findings of fact relevant to our decision:[2]

(1) Sellers were the owners in fee simple of certain improved real property located at 5687 Doliver, Houston, Harris County, Texas.

(2) Sellers, by earnest money contract, dated March 31, 1986, agreed to sell and buyers, Bernard S. Herbage and Braxie

---

1. Elizabeth Snoddy is the mother of James Snoddy, Jr. and Sara Peterson. The property in issue was a house that had been in the Snoddy family for many years. Sara Peterson was the representative of the family in the sale.

2. The trial court referred to the parties as "plaintiffs" and "defendants" in making its findings of facts and conclusions of law. For clarity and consistency, we substitute "sellers" for plaintiffs, and "buyers" for defendants.

Ann Herbage, agreed to purchase the property.

(3) Pursuant to the earnest money contract, buyers were to finance $220,000 for 15 years with payments of $2,364.14 per month.

(4) The interest rate bearing on the earnest money contract was ten percent (10%).

(5) On April 3, 1986, buyers filed a handwritten residential loan application for a loan in the amount of $220,000 for 15 years with interest bearing at nine and seven-eighths percent (9⅞%).

(6) On May 28, 1986, buyers filed a typed application for a loan in the amount of $220,000 for fifteen (15) years with interest bearing at ten and one-half percent (10.-5%).

(7) Pursuant to the earnest money contract, buyers filed with Charter Title Company earnest money in the amount of $5,000.[3]

(8) The earnest money contract provides for a nondefaulting party to recover the earnest money and their attorney's fee, if suit is filed.

(9) Pursuant to the earnest money contract, the closing date on the property was May 31, 1986.

(10) Buyers failed to close on the property pursuant to the earnest money contract.

(11) At all material times, sellers were ready, willing and able to convey good title to the property as required by the terms of the earnest money contract. Sellers made repeated demands on buyers that they appear for closing of the property.

(12) Buyers repeatedly assured the sellers that the financing described in the earnest money contract had been obtained and that buyers were merely continuing to negotiate for a more favorable interest rate.

The trial court determined in its conclusions of law that the buyers had breached the contract, and the sellers were entitled to receive damages. The court did not say specifically what act or acts of the buyers breached the contract. We understand from the briefing and argument of the case that the sellers claim the buyers' failure to apply for a loan in the exact terms of the earnest money contract breached the contract.

We quote from the sellers' supplemental brief in ascertaining the fundamental issue of the appeal:

> During oral argument, this Court asked whether appellees (sellers) were contending that appellants' (buyers) handwritten application for loan failed to comply with the Contract. As was noted by the buyers during their oral argument, the handwritten application was filled out at the time of the initial interview with the mortgage company. This handwritten application was then typed and submitted as a formal application. Thus, there were not two applications but one application which was initially in draft (handwritten) and then put in final form (typed). This typed written application was clearly in violation of the Contract because it called for an interest rate which was at the rate of 10.5% when the Contract clearly stated it was not to exceed 10%. Thus, the trial court was correct in holding that appellants breached the Contract.

Under an earnest money contract, the purchasers are required to apply for the loan reflected in the earnest money contract. *Breda v. Guardian Title Co.*, 559 S.W.2d 449 (Tex.Civ.App.—Waco 1977, no writ). Furthermore, where the purchaser's contractual right to recover its earnest money deposit was conditioned upon the purchaser's inability to secure financing on the stated terms, the purchaser's failure to apply for a loan on those terms did not satisfy the contractual condition for return of the earnest money deposit. *Smith v. Evans*, 620 S.W.2d 627 (Tex.Civ.App.—Dallas 1981, no writ).

The purchasers of a property are obligated to at least attempt to gain approval for the loan required in the earnest money contract. Even though the efforts may be futile, failing to apply for the loan reflected

---

3. Charter was an original defendant but was dismissed from the suit after interpleading the earnest money into the registry of the court.

in the earnest money contract is a breach of the contract. *McDaniel v. Kudlik,* 598 S.W.2d 350 (Tex.Civ.App.—Houston [14 Dist.] 1980, writ ref'd n.r.e.).

### Standard of Review

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are not conclusive, however, when a complete statement of facts appears in the record. *Middleton v. Kawasaki Steel Co.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985); *Stephenson v. Perlitz,* 537 S.W.2d 287, 289 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.).

The trial court's findings of fact are reviewable for the legal and factual sufficiency of the evidence supporting them, *First National Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Given the trial court's findings, and the positions taken by the litigants on appeal, the fundamental issue to resolve is whether the trial court was correct in concluding from the facts that the loan application[4] submitted by the buyers to the mortgage company was for an interest rate inconsistent with the earnest money contract, and, therefore, a breach of the contract.

Under point of error four, the buyers assert the terms of the contract entitle them to a return of the earnest money. The portion of the contract relevant to third-party financing is as follows:

> A third party first lien note of $220,000, due in full in 15 years, payable in initial monthly payments of principal and interest *not exceeding* $2,364.14 for the first 15 years of the loan.

(Emphasis added.)

The trial court found in its factual finding number four that the interest rate called for in the above-stated portion of the contract was 10%. This finding is not challenged on appeal. The trial court found in its factual finding number three that the contract contained the provision as quoted above, except the words "not exceeding" are not in the court's findings. On appeal, both sides to the litigation treat the contract as containing the words "not exceeding" as it clearly does.

We understand the sellers' argument to be that the contract did not obligate the buyers to accept an interest rate in excess of 10% in obtaining third party financing. We agree. Moreover, we read the contract and the law as requiring the buyers to prove they could not obtain financing at the maximum rate allowable under the contract, 10%, in order to retain their earnest money.[5]

### THE HAND–WRITTEN APPLICATION: 9–⅞%

We conclude the hand-written application for a loan at 9–⅞%, the trial court's factual finding number five, when considered as the buyer's only proof of compliance, is not in substantial compliance with the contract for the buyers to be entitled to receive a refund of their earnest money deposit. Although not an act of breach per se, if this

---

4. The sellers argue the first application should not be considered separately. It is not critical to our decision whether the buyers submitted one or two applications. Neither application called for the exact maximum interest rate specified in the earnest money contract. No issue was made of the fact the interest rate may have "floated" from 9–⅞ to 10–½ during the time the application was pending.

5. When we speak throughout the opinion of a buyer having to prove something in order to recover his earnest money, we speak of a generic buyer. In this case, by bringing the action, the seller assumed the burden of proving the buyer's breach.

were the buyers' only evidence of efforts to obtain financing, it would amount to an act of material breach. (Standing alone, proof of an application refused at 9–⅞% would be no evidence of what would happen at 10%) *Smith v. Evans*, 620 S.W.2d 627, 628 (Tex. App.—Dallas 1981, no writ). The buyer must be able to prove a loan would have been refused at the maximum rate permitted by the contract to avoid breach. The buyers may seek, of course, the most advantageous loan possible without breaching the earnest money contract.

## THE TYPED APPLICATION: 10–½%

■ The issue then becomes under the facts of this case whether the buyers' typed application, at a rate of 10–½%, was performance substantially consistent with the terms of the contract such as to avoid a finding of material breach.

We do not agree with the sellers' view that the Dallas Court of Appeals holding in *Smith v. Evans* encompasses the facts of this case. At one point the court states:

> We reverse and render because we hold that where the buyer's contractual right to recover its earnest money is conditioned upon buyer's inability to secure financing on stated terms, the condition is not met if the buyer fails to apply for a loan on the stated terms.

*Smith*, 620 S.W.2d at 627.

However, later in the same opinion, the court makes the following observation:

> We agree with the seller. Under the terms of the contract, it was buyer's duty and responsibility to apply for a loan upon the terms stated in the contract. Since the only application made by buyer was on different terms than those specified, buyer, by his own act, **made it impossible to determine** whether a loan on the specified terms would be "approved" by a lender.

*Smith*, 620 S.W.2d at 628 (emphasis added).

The case before us presents a circumstance in which the buyers did not apply for a loan in the exact maximum terms called for in the earnest money contract, but it is **not impossible** to determine whether the loan on the specified terms would be approved.

Sellers' exhibit 23 (plaintiff's exhibit in the trial court) is a form entitled, "Statement of Credit, Denial, Termination or Change." The form indicates that the Herbage loan in the amount of $220,000 at 10–½% for 30 years was rejected by the lender because of insufficient income and inadequate collateral on June 17, 1986.

Again, we understand the sellers' sole claim of breach to be the buyers' act of applying for the loan in the amount of 10–½% rather than 10%. There is no claim that the buyers failed to reasonably pursue other credit opportunities, in a timely fashion or otherwise. There is no specific finding by the judge, or pleading by the sellers, that the buyers failed to pursue the application for mortgage loan in a reasonable manner under the then prevailing economic conditions, or in good faith. Finally, there is no claim, or finding, that the buyers could have "bought down" the interest rate from 10–½% to 10% within the parameters set out in the earnest money contract.

The sellers' pleadings allege a breach of contract in the buyers' failure to timely close the transaction, and that they had been misled by the buyers as to the status of the financing during the loan process period.

■ Failure to close may be a material breach in the event the buyers had obtained, or could have obtained with a good faith effort, the financing called for in the contract. Failure to close may not be a breach in the event the buyers made good faith efforts to obtain the loan under the contract conditions, but were unable to do so. We do not understand the sellers' pleading allegations that they were misled by the buyers during the contract period as to having obtained financing as stating a cause of action under the earnest money contract. Neither of these theories has been briefed or argued on appeal, and the trial judge made no specific findings relative to them.

Under the facts of this case, any breach committed by the buyers in applying for an interest rate *in excess of that required by the contract* could not be a material breach of the contract. A denial of credit for a loan of 10–½%, all other elements of the applications

being equal, permits the conclusion that an application for credit at 10% would have been denied as well. Therefore, it is possible to determine, as it was not possible under the facts of *Smith v. Evans,* that the buyers' application for the loan at 10% would be denied. On what basis would a lending institution deny credit to a prospective borrower at one rate, and yet lend money to the same borrower at a rate even more advantageous to the borrower than the rejected rate?[6]

We hold the buyers' failure to comply literally with the direction to apply for a loan at a 10% rate of interest was not a material departure from the terms of the earnest money contract. Rather, the buyers' typed application, at a rate of 10-½%, was in substantial compliance with the earnest money contract terms. *Cowman v. Allen Monuments, Inc.,* 500 S.W.2d 223, 227 (Tex.Civ.App.—Texarkana 1973, no writ). The purpose of the 10% limit is to protect a buyer against an upwardly floating interest rate, and to cap his exposure on what he must pay to obtain the loan. The buyer's willingness to accept 10-½% worked to the seller's advantage in this case. It would seem ironic that a buyer's offer to pay a higher price than bargained for would work to defeat his claim for return of his earnest money.

The other cases cited by the sellers are not inconsistent with our conclusion. In *McDaniel v. Kudlik,* 598 S.W.2d 350, 351 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), the primary financing method in the transaction was to be an assumption of the existing mortgage. The court found that the buyers in that case were at least obligated to make an attempt to secure the assumption, which the jury found the buyers did not do. *Id.* Here, although the buyers' attempt to comply was at a different interest rate, we can conclusively determine the result they would have achieved by applying in exactly the terms required by the contract.

The factual situation in *Breda v. Guardian Title Co.,* 559 S.W.2d 449 (Tex.App.—Waco 1977, no writ), is substantially different from the facts before us. In *Breda,* the loan sought was not pursued to a decision by the lender. *Id.* at 450–451. The loan officer in charge testified the Bredas were never turned down for the loan, and that the Bredas had bought another house. *Id.* at 451. Here, the loan was pursued, but was ultimately refused by the lender.

Point of error number four is sustained.

We understand in points of error one through three that the buyers assert the oral extension of the contract was not legally effective, and thus there was no breach before the contract expired on May 15. The buyers ask us to assume the validity of the alleged modification of the contract in considering point of error number four. Ironically, if we accepted the buyers' position that the contract had expired on May 15, then the seller would be entitled to the earnest money, as we have found the application at 9-⅞% standing alone was a material breach under the cases cited by the sellers.

■ We understand the dissent to argue that in applying for a loan at 9-⅞%, the buyer did not breach the earnest money contract. Under the facts of this case, we agree. But the contract also obligates the buyer to accept financing within the terms of the agreement regardless of what rate they may have tried to obtain. The buyers have a dual obligation, (1) to apply for and seek financing in good faith, and (2) to accept financing not exceeding the maximum bargained for. The buyers' obligation is not solely to apply within the parameters of the interest rate requirements of the contract as suggested by the dissent, but to also prove that they could not have received financing even if they had timely, and in good faith, applied for a loan at

---

6. This assumes, of course, that all other elements of the loan packages, such as terms of years and amount financed, would be identical. There is no claim in this case that the buyers' application for a mortgage loan was in any other way different from the requirements of the earnest money contract. It further assumes the applications would be made at the same time. It is, of course, true that a prospective borrower might

qualify, in the abstract, for a loan at a lower rate, and not at a higher one, on the same principal amount. But here, with the seller assuming the burden of proof, there is no claim that 10-½% was not the prevailing market rate at the time of refusal, and that 10% money was available to the buyer, only that applying at 10-½% was a *per se* breach of the earnest money contract.

the maximum interest rate stated in the earnest money contract.

The issue decided by the trial court was whether the money placed into escrow by the buyers should be awarded to the sellers as damages. Because we decide the sellers have not proven their entitlement to the escrow funds under the evidence and pleadings of this case, we render judgment for the buyers and order the escrow money returned to them. Because there is no affirmative claim for attorney's fees in the buyers' pleadings, no other issue remains for the trial judge to determine.

The judgment of the trial court is reversed and judgment is rendered that the earnest money be returned to the buyers and appellants, the Herbages.

MIRABAL, J., dissents.

MIRABAL, Justice, dissenting.

I dissent. Although I agree the trial court's judgment should be reversed, I disagree with the analysis in the majority opinion. Further, due to the lack of necessary pleadings in the trial court, we should not render judgment in this case, but rather should remand.

The relevant contract provisions appear in the February 8, 1985, standard earnest money contract form, promulgated by the Texas Real Estate Commission, titled:

ONE TO FOUR FAMILY RESIDENTIAL EARNEST MONEY CONTRACT (RESALE) ALL CASH, ASSUMPTION, THIRD PARTY CONVENTIONAL OR OWNER FINANCED

The form contract provides, in relevant part:

4. FINANCING:

    C. THIRD PARTY FINANCED:

      1. A third party first lien note of $220,000, due in full in 15 years, payable in initial monthly payments of principal and interest *not exceeding* $2,364.14 [1] for the first 15 years of the loan.

. . . .

Buyer shall apply for all third party financing . . . within 7 work days from the effective date of this contract and shall make *every reasonable effort to obtain the same.* Such financing . . . shall have been approved when Buyer has satisfied all of lenders' financial conditions. . . . If such financing . . . is not obtained within 45 days from the effective date hereof, this contract shall terminate and the earnest money shall be refunded to Buyer.

. . . .

9. CLOSING. The closing of the sale shall be on or before May 30, 1986. . . .

EXECUTED in multiple originals effective the 31st day of March, 1986.

(Emphasis added.)

The buyers in this case complied with the contract by:

1. Applying for a loan within 7 working days of the effective date of the contract,

2. in the principal amount of $220,000 payable over 15 years, and

3. bearing an interest rate *not exceeding 10% per annum.* (The buyer sought 9–⅞% per annum interest.)

The buyers strictly complied with the terms of the contract. It is uncontested that the buyers did not obtain approval of the sought-after financing by May 15, 1986 (45 days after the effective date of the contract), and therefore, by its own terms, the earnest money contract terminated, and the buyers were entitled to a refund of their earnest money.

There is no evidence, and no finding of fact, that the parties made a written agreement, or an oral agreement prior to May 15, 1986, to extend the May 15 deadline.[2] Further, the sellers do not claim the buyers breached the contract by failing to "make

---

1. In other words, the loan shall bear interest at a rate not exceeding 10% per annum.

2. An exception to the rule, that the parties to a written contract within the statute of frauds may not alter terms by oral agreement, permits parties to orally agree to extend the time of performance of the contract so long as the oral agreement is made before the expiration of the written contract. *Dracopoulas v. Rachal,* 411 S.W.2d 719, 721 (Tex.1967).

every reasonable effort" to obtain financing. The *only* breaches of the contract claimed by the sellers are that (1) the buyers did not apply for financing at the exact interest rate of 10% per annum, and (2) the buyers did not close on the sale by May 30, 1986.

The majority relies on *Smith v. Evans*, 620 S.W.2d 627 (Tex.App.—Dallas 1981, no writ). However, *Smith v. Evans* supports the position of this dissent, rather than the majority's position. The actual holding in *Smith v. Evans* is:

> [W]here the buyer's contractual right to recover its earnest money is conditioned upon buyer's inability to secure financing on stated terms, the condition is not met if the buyer fails to apply for a loan on the stated terms.

*Id.* at 627.

In *Smith v. Evans*, the earnest money contract was conditioned upon the buyer obtaining approval for a purchase money loan payable in 30 years, with interest not exceeding 9-⅞% per annum. The buyer applied for, and *was approved* for, a 25–year loan at 9-⅞% per annum interest. After the allowed time for securing financing had elapsed, the buyer demanded return of his earnest money, claiming the loan for which he was approved was the best he could get under any application, and therefore it was not important that he did not apply for a *30*–year loan at 9-⅞% interest. The Dallas Court of Appeals stated that, because the only application made by the buyer was on different terms than those specified in the contract, it was impossible to determine whether a loan on the specified terms would have been approved by the lender. *Id.* at 628. There-

fore, the condition for the return of the earnest money had not been met, and the buyer was not entitled to the earnest money. *Id.*

Unlike the buyer in *Smith v. Evans*, the buyers in the present case applied for a loan on the same terms that were stated in the earnest money contract, namely: a 15–year, $220,000 loan bearing interest at a rate not exceeding 10% per annum. The buyers did not receive approval of their loan application within the time specified in the contract, even though they apparently made every reasonable effort to obtain loan approval. Applying the reasoning of *Smith v. Evans*, the buyers were entitled to return of their earnest money.

In their first point of error, the buyers assert that the trial court "erred in granting a judgment against defendants because the contract expired as of May 15, 1986, under its own terms." I would sustain the buyers' first point of error. However, because the buyers filed only a general denial in the trial court,[3] I would reverse the judgment and remand the case to the trial court, in view of the fact the issue of the proper disposition of the earnest money in the registry of the court remains pending.[4]

---

3. The buyers did not file a counterclaim or any other pleading affirmatively seeking a judgment in their favor for return of the earnest money and attorneys' fees.

4. Although not necessary to this dissenting opinion, I am compelled to comment on the second half of the majority opinion dealing with the typed loan application that seeks a loan at an interest rate of 10.5% per annum. I disagree with the majority's conclusion that:

> A denial of credit for a loan of 10.5%, all other elements of the applications being equal, permits the conclusion that an application for credit at 10% would have been denied as well.

An additional .5% annual interest charge on a 15–year, $220,000 loan, amounts to an additional monthly payment of $118.21. This is not an insignificant amount, in my opinion.

I note that the record contains a June 17, 1986, letter from the mortgage company rejecting the buyers' application for a *30*–year loan of $220,000 at an annual interest rate of 10.5% interest. The monthly principal and interest payment for such a loan would be $2,012.43 (less than the $2,364.14 maximum monthly payment called for in the earnest money contract). I decline to comment on whether the rejected application for a 30–year loan was in substantial compliance with the earnest money contract terms, since the majority does not comment on that question.