James C. BOND d/b/a Shamrock
Construction Company,
Appellant,

v.

KAGAN–EDELMAN ENTERPRISES, Kagan–Edelman Capital Fund Series VII Ltd., Lawrence M. Kagan, and Darryl B. Edelman, Appellees.

Gateway Lumber Co., Inc., Appellant,

v.

Kagan–Edelman Enterprises, Kagan–Edelman Capital Fund Series VII Ltd., Lawrence M. Kagan, and Darryl B. Edelman, Appellees.

No. 01–98–00128–CV

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1999.

Rehearing Overruled Feb. 25, 1999.

Bridget Champman, Eldon Lee Young-blood, Oscar Nipper, Houston, for Appellant.

John J. Irwin, Eric Lipper, Jeffrey J. Brookner, Houston, for Appellees.

Before Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MICHOL O'CONNOR, Justice.

This is an appeal from a judgment in a suit to recover payment for labor and materials furnished by James C. Bond d/b/a Shamrock Construction Co. (Bond), the appellant here and plaintiff below, and Gateway Lumber Co., appellant here and intervenor below, from Kagan–Edelman Enterprises, Kagan–Edelman Capital Fund Series VII Ltd., Lawrence M. Kagan, and Darryl B. Edelman, the appellees here and defendants below (collectively referred to as Kagan–Edelman). Bond and Gateway appeal the trial court judgment in favor of Kagan–Edelman.[1]

We reverse and remand to the trial court for proceedings consistent with this opinion.

### A. Factual Background

Kagan–Edelman owns Cypresswood Court Shopping Center. On May 12, 1994, Kagan–Edelman signed a contract with John Irwin for the construction and leasing of a space in the shopping center. The commencement date of Irwin's lease was October 1, 1994. Irwin was not required to make rental payments before that date.

Under the contract, Irwin was required to complete construction of the premises for use as a restaurant. Kagan–Edelman agreed to contribute $27,732 to the cost of construction, but reserved the right to retain 10% of the construction allowance as a "normal construction retainer." Completion of the premises was a condition precedent to the commencement of the lease. Irwin was required to open the premises to the public for business within 30 days after it was ready for occupancy.

Irwin hired Bond to complete the interior construction of the restaurant. Bond met with Kagan–Edelman before construction and Kagan–Edelman provided Bond with interior finish specifications. Kagan–Edelman required all work performed by Bond to conform to those specifications. Bond prepared and submitted plans to Irwin and Kagan–Edelman for approval. Kagan–Edelman representatives inspected the work weekly.

Bond provided labor and material for the construction between May 19 and June 30, 1994. This included installing temporary utilities and completing the site work, which consisted of concrete sawing, breaking out, removing concrete, and concrete pouring. Bond also installed the exterior and interior doors, an acoustic ceiling with insulation, sheetrock, the cabinets and shelving, formica, floor tile, and fiberglass reinforcing boards as required for restaurants by the health department.

The agreed price for Bond's labor and material was $34,691.21. Bond was only paid $4,700, leaving an unpaid balance of $29,-991.21. Bond and his employees discontinued their work on the premises as soon as Bond learned Irwin was not going to pay him for his services.[2]

Bond sent notice of his claim and demand for payment to Irwin on July 5, 1994 and to Kagan–Edelman on July 15, 1994. Bond filed a lien affidavit of record against the real property and improvements to perfect his claim for payment. Bond sent notice of his

---

1. Bond and Gateway also sued another defendant, John Irwin, who did not appear for trial. The trial court found in favor of Bond and Gateway on their claims against Irwin. The trial court signed a judgment against Irwin in favor of Bond for $29,991.32, plus prejudgment interest and attorney's fees. The trial court signed a judgment against Irwin and Bond, joint- ly and severally, in favor of Gateway for $13,-306.17, plus prejudgment interest and attorney's fees. Bond does not appeal Gateway's judgment. Irwin has not appealed in either case.

2. Bond testified that Irwin gave him two checks that were returned for insufficient funds.

claim and demand for payment to Irwin and Kagan–Edelman, with a copy of the lien affidavit, on July 21, 1994 and again on July 29, 1994. Kagan–Edelman admitted receiving these notices from Bond.

Gateway supplied and delivered lumber materials to Bond for use in the build-out. The cost of Gateway's goods and services was $13,306.17, which was not paid. On August 3, 1994, Gateway sent notice of the unpaid balance and demand for payment to Irwin and Kagan–Edelman. On August 11, 1994, Gateway filed an affidavit for mechanic's lien and materialmen's lien against the real property owned by Kagan–Edelman.

Despite receiving the notices of the claims by Bond and Gateway, on September 27, 1994, Kagan–Edelman paid Irwin the agreed construction price of $27,732. Kagan–Edelman required Irwin to sign a release and an affidavit stating all debts incurred in the construction of the restaurant had been paid. Kagan–Edelman accepted a $35,000 promissory note from Irwin, which Kagan testified was accepted in case other claims related to the construction arose.

Bond sued Kagan–Edelman for breach of contract, funds trapping and retainage under the Texas Property Code, foreclosure of a statutory mechanic's lien, and unjust enrichment for the improvements to their property. Gateway intervened and sued Bond, Irwin, and Kagan–Edelman to recover $13,306.17, the cost of the materials it had supplied to Bond for construction of the restaurant. The case was tried to the court. The trial court found against Bond and Gateway, concluding neither of them had a claim against Kagan–Edelman under the Property Code. On appeal, Bond and Gateway challenge the trial court's findings and conclusions of law.

### B. Standard of Review

■ Findings of fact in a case tried to the court have the same force and dignity as the jury's verdict on special issues. *Herbage v. Snoddy*, 864 S.W.2d 695, 698 (Tex.App.—Houston [1st Dist.] 1993, writ denied). However, findings of fact are not conclusive when a complete statement of facts appears in the record. *Id.* Findings of fact are binding on this Court only if supported by evidence of probative force. *Pontiac v. Elliott*, 775 S.W.2d 395, 399 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The trial court's findings of fact are reviewable by the same standards applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Stern v. Wonzer*, 846 S.W.2d 939, 942 (Tex. App.—Houston [1st Dist.] 1993, no writ).

In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and ignore all evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297; *Stern*, 846 S.W.2d at 942. If there is any evidence of probative force, we must overrule the point and uphold the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Stern*, 846 S.W.2d at 942. In reviewing the factual sufficiency of the evidence, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Pizzitola v. Galveston County Cent. Appraisal Dist.*, 808 S.W.2d 244, 246 (Tex.App.—Houston [1st Dist.] 1991, no writ). We will set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176; *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 931 (Tex. App.—Houston [1st Dist.] 1993, no writ).

■ The legal conclusions of the trial court are not binding upon an appellate court. The review of conclusions of law is de novo, and we are free to draw our own legal conclusions. *Connelly v. Paul*, 731 S.W.2d 657, 661 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Although a party may not challenge the trial court's conclusions of law for factual insufficiency, a party may challenge them as incorrect, based on the facts. *Airflow Houston*, 849 S.W.2d at 931. We will uphold the conclusion if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

## C. Analysis

In issue one, Bond claims Kagan–Edelman is liable to him under the mechanic's lien statute. He challenges the following conclusions of law:

(3) James Bond and Gateway Lumber Company do not have a valid lien on *the entire Cypresswood Shopping Center* because when the lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor.

\* \* \*

(5) Neither Bond nor Gateway have a claim under the Property Code. Bond and Gateway's claims for funds trapping also fail as a matter of law because it is Irwin who should have withheld funds to pay Gateway, not the property owner Kagan–Edelman.

Both of these conclusions depend on the trial court's factual finding that Kagan–Edelman and Irwin had only a landlord-tenant relationship.[3] Bond challenges the conclusions as incorrect based on the facts. Therefore, we are required to examine the sufficiency of the evidence to support the trial court's factual finding. *See Airflow Houston,* 849 S.W.2d at 931. Once we determine the status of the Kagan–Edelman relationship, we may properly resolve the remaining questions of law.

### 1. *Relationship between Kagan–Edelman and Irwin*

■ Bond insists the trial court's finding is against the great weight and preponderance of the evidence because it showed Irwin had two relationships with Kagan–Edelman. We agree with Bond.

The trial court relied on a provision in the contract between Irwin and Kagan–Edelman that stated the only relationship created by the agreement was that of a landlord and tenant. This provision disclaimed the creation of any other relationship.

Although the disclaimer provision indicates there was only a landlord-tenant relationship, this provision is not conclusive on the issue. *See Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324, 329 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (rejecting argument that disclaimer of agency in written agreement was conclusive because jury was presented with evidence of other provisions that indicated agency relationship). To determine whether the evidence established something more than only a landlord-tenant relationship, we consider the remaining provisions of the contract as well as Kagan–Edelman and Irwin's conduct. *See Stanford v. Dairy Queen Products of Texas,* 623 S.W.2d 797, 801 (Tex.App.—Austin 1981, writ ref'd n.r.e.) (stating court may consider a contract as a whole to determine relationship of parties when one provision indicates one relationship and another provision suggests a different relationship).

The trial court's finding that the only relationship was landlord and tenant ignores an important provision in the contract that states the commencement date of the lease was October 1, 1994.[4] The contract was signed by Kagan–Edelman and Irwin on May 12, 1994. An exhibit was incorporated into the contract which stated the terms and requirements for constructing the restaurant. As Bond argues, this evidence shows Irwin's relationship to the land and Kagan–Edelman between May 12, 1994 and October 1, 1994 was as original contractor for the construction of the restaurant.

---

**3.** The trial court's finding of fact 7 states, "The lease agreement expressly recognizes that the relationship between the property owner defendants (Kagan–Edelman) and John Irwin is only that of a landlord-tenant relationship." The trial court recited the lease provision upon which it relied:

Nothing herein contained shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of a principal and agent or of a partnership or of a joint venture between two parties hereto, it being understood and agreed that neither method of computation of rent, nor any other provision contained herein, nor any acts of the parties hereto, shall be deemed to create any relationship between the parties hereto other than the relationship of landlord and tenant.

**4.** The contract actually says the commencement date of the lease was August 1, 1994, but the parties later modified that date to October 1, 1994.

The trial court's finding ignores a provision of the contract that required Kagan–Edelman to withhold 10% of the construction allowance "for a period of thirty days from date of disbursement of construction draw, and normal construction retainer." Under the contract, Kagan–Edelman agreed to construct the restaurant. Kagan admitted that the 10% to be withheld under the contract was the retainage required to be withheld under the mechanic's lien statute. Kagan–Edelman was not required to retain funds under the mechanic's lien statute unless Irwin was the original contractor. *See* Tex. Prop.Code § 53.101(a)(1) (requiring property owner to retain 10% of the contract price of work under an original contract for which a mechanic's lien may be claimed; it must be retained during the progress of the work and for 30 days after work is completed).

The trial court's finding ignores a provision of the contract that set the terms for payment to Irwin. Before Irwin would be paid by Kagan–Edelman, Irwin was to complete the construction, sign a release and affidavit of release of liens evidencing payment of all bills in connection with the construction, and acknowledge the commencement of the leasehold terms. Although it seems from the record that Irwin did not complete the construction, he did sign a release and affidavit of liens, which Kagan–Edelman accepted, to induce payment of the $27,732 construction allowance.

The trial court's finding ignores the evidence which showed Kagan–Edelman recognized Irwin's status of contractor. The release, provided by Kagan–Edelman and signed by Irwin, identified Irwin as the "contractor" for the construction. Kagan–Edelman testified that it had paid money and received lien waivers from at least six other subcontractors who had worked on the restaurant because Irwin said they were owed money for their work. Kagan–Edelman paid those parties by joint checks made payable to Irwin and the subcontractors. Kagan explained he did this because "normally in a situation where there is a dispute, I want to make sure that people that are entitled to get

paid get paid." Bond was in the same position as the other subcontractors in relation to Irwin and Kagan–Edelman.[5] If Irwin were truly only a lessee to Kagan–Edelman, then Kagan–Edelman would not have been required to pay the other subcontractors. Therefore, Kagan–Edelman's argument that Irwin was only a lessee and not its contractor is unpersuasive.

The trial court's finding ignores the promissory note signed by Irwin and given to Kagan–Edelman. At the same time Kagan–Edelman received the release and lien waiver from Irwin, it accepted a $35,000 promissory note from Irwin in case other claims arose. Kagan–Edelman had knowledge of Bond and Gateway's claims when it accepted the promissory note.

All of this evidence outweighs the trial court's finding that the only relationship between Kagan–Edelman and Irwin was that of a landlord and tenant. The great weight and preponderance of the evidence supports Bond's argument that Irwin was Kagan–Edelman's contractor from May 12, 1994 until October 1, 1994. Bond's rights were to be determined as of May 19, 1994, and at that time, Kagan–Edelman was the fee simple owner.

Having determined the status of the parties, we address conclusion of law five and determine whether Bond and Gateway have liens and claims for funds trapping under the Property Code. If so, then we address conclusion of law three and determine the extent of their liens.

### 2. Entitlement to Mechanic's Lien

■ A person is entitled to a lien if the person furnishes labor or materials for construction or repair of a house, building, or improvement under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor. Tex. Prop.Code § 53.021(a). The "original contractor" is the person contracting with an owner either directly or through the owner's agent. Tex. Prop.Code § 53.001(7). The "subcontractor" is the person who furnished labor or materials to fulfill an obligation to an

---

5. The trial court specifically asked Kagan why he did not pay Bond, and Kagan responded by saying Irwin said he would work out the dispute with Bond.

original contractor or to a subcontractor to perform all or part of the work required by an original contract. Tex. Prop.Code § 53.001(13). The "original contract" is the agreement to which an owner is a party either directly or by implication of law. Tex. Prop.Code § 53.001(6).

The rights of the parties must be determined as of May 19, 1994, the date Bond started work on the property. *See* Tex. Prop.Code § 53.124(a). Applying these definitions to the parties, Irwin was the original contractor by virtue of his agreement (the original contract) with Kagan–Edelman to construct the restaurant. *See* Tex. Prop. Code § 53.001(7). Bond is a subcontractor who furnished labor and materials to the original contractor, Irwin, to perform the work required by the original contract. *See* Tex. Prop.Code § 53.001(13). Therefore, Bond was entitled to a lien because he furnished labor and materials for construction and improvements to Kagan–Edelman's building by virtue of the contract between Kagan–Edelman and Irwin. *See* Tex. Prop. Code § 53.021(a).

### 3. *Perfection of the Lien*

The Property Code provides two methods by which a subcontractor can perfect a lien upon the owner's property, funds trapping and statutory retainage. The owner of property may be liable to the subcontractor for trapped funds and statutory retainage. *See* Tex. Prop.Code. §§ 53.084(b), 53.105(a). A subcontractor, therefore, has two remedies against the owner under the Property Code, and neither one is an exclusive remedy. *See Ambassador Dev. Corp. v. Valdez*, 791 S.W.2d 612, 622 (Tex.App.—Fort Worth 1990, no writ); Tex. Prop.Code § 53.084(b) (stating the owner is liable on a

claim for trapped funds in addition to a claim for statutory retainage).

Bond claims Kagan–Edelman was liable to him because he perfected his lien according to both methods. We agree with Bond.

### a. Funds Trapping

The first method of perfecting a lien is the fund trapping method, provided by Subchapter D,[6] entitled "Funds Withheld by Owner Following Notice." Tex. Prop.Code §§ 53.081–53.084. Under the fund trapping method, a subcontractor can trap funds payable to the original contractor if the subcontractor gives the owner timely notice that he has not been paid. *See* Tex. Prop.Code §§ 53.081–84. If the owner pays any money to the original contractor after receiving notice from the subcontractor, the owner is liable and his property is subject to a lien to the extent of the money paid. *See Valdez*, 791 S.W.2d at 622; Tex. Prop.Code § 53.084(b).

Bond perfected his lien according to the procedures in Subchapter D for fund-trapping. Bond sent notice of his claim and demand for payment to Irwin on July 5, 1994, and to Kagan–Edelman on July 15, 1994. Bond then filed a lien affidavit of record against the real property and improvements to perfect his claim for payment. Bond sent notice of his claim and demand for payment to Irwin and Kagan–Edelman, with a copy of the lien affidavit, on July 21, 1994 and on July 29, 1994. Kagan–Edelman admitted receiving these notices from Bond. Irwin did not give written notice to Kagan–Edelman of any intent to dispute the claim; therefore, Kagan–Edelman was required to withhold the funds and pay Bond's claim. *See Valdez*, 791 S.W.2d at 622; Tex. Prop. Code §§ 53.083, 53.084(b).

---

**6.** Subchapter D provides, in relevant part, as follows:

> Sec. 53.084. Owner's Liability
> (a) Except for the amount required to be retained under Subchapter E [required retainage], the owner is not liable for any amount paid to the original contractor before the owner is authorized to withhold funds under this subchapter.
> (b) If the owner has received the notices required by Subchapter C, if the lien has been

> secured, and if the claim has been reduced to final judgment, the owner is liable and the owner's property is subject to a claim for any money paid to the original contractor after the owner was authorized to withhold funds under this subchapter. *The owner is liable for that amount in addition to any amount which is liable under Subchapter E.*
> Tex. Prop.Code § 53.084 (emphasis added).

We find that Kagan–Edelman is liable to Bond for trapped funds to the extent of the amount it paid Irwin after receiving notice from Bond.[7] *See Valdez,* 791 S.W.2d at 622; Tex. Prop.Code § 53.084(b).

### b. Statutory Retainage

■ The second method of perfecting a lien is the statutory retainage method provided for in Subchapter E,[8] "Required Retainage for the Benefit of Lien Claimants" (sections 53.101–53.105). The statute requires the owner to retain 10% of the contract price of the work to the owner during the progress of work under an original contract for which a mechanic's lien may be claimed and for 30 days after the work is completed. Tex. Prop. Code § 53.101. The retained funds secure the payment of those who furnish material and labor for any contractor or subcontractor in the performance of the work. Tex. Prop. Code § 53.102. A claimant has a lien on the retained funds if timely and proper notices are sent and the claimant files an affidavit claiming a lien not later than the 30th day after the work is completed. Tex. Prop.Code § 53.103. If the owner does not comply with Subchapter E, the persons who make claims under this subchapter have a lien for the amount that should have been retained from the original contract; and, the owner is liable for the amount that should have been retained. *See Valdez,* 791 S.W.2d at 622; Tex. Prop.Code §§ 53.103, 53.105(a).

Kagan–Edelman was required by its agreement with Irwin to retain 10% of the $27,732 construction allowance. Kagan–Edelman admitted the 10% to be withheld under the agreement is the statutory retainage required to be withheld by the statute. Kagan–Edelman was required to retain it during the progress of the work and for 30 days after the construction work was completed. *See* Tex. Prop.Code § 53.101(a)(1). Kagan–Edelman does not dispute that Bond followed the statute and gave the required notice. Kagan–Edelman admits receiving the notices. Bond timely filed an affidavit claiming his lien.

Under the statute, Kagan–Edelman may be liable only for 10% of the original contract price, which equals $2,732.[9] *See* Tex. Prop. Code §§ 53.101. We find that Kagan–Edelman was required to retain $2,732 as statutory retainage, and Bond perfected his lien against Kagan–Edelman's property to the extent of the amount that should have been retained. *See Valdez,* 791 S.W.2d at 622; Tex. Prop.Code §§ 53.103, 53.105(a).

### 4. *Extent of Bond's Lien*

■ Having determined that Kagan–Edelman is liable to Bond, and that Bond has a valid lien against Kagan–Edelman's proper-

---

7. Kagan–Edelman may be liable to Bond for funds trapping up to $27,732, the amount Kagan–Edelman paid Irwin after receiving notice. We do not decide the exact amount of the funds trapped. Once the trial court determined Kagan–Edelman was not liable for funds trapping, it was not required to determine the amount of funds trapped. Our finding is on Kagan–Edelman's liability only. On remand, the trial court must determine the amount to which Bond is entitled for fund-trapping.

8. Subchapter E provides, in relevant part, as follows:

    Sec. 53.101. Required Retainage
    (a) During the progress of work for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall retain:
    (1) 10 percent of the contract price of the work to the owner; or
    (2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract price or, if there is no contract

price, using the reasonable value of the completed work.
    Sec. 53.105. Owner's Liability for Failure to Retain
    (a) If the owner fails or refuses to comply with this subchapter, the claimants complying with this subchapter have a lien, at least to the extent of the amount that should have been retained, against the house, building, structure, fixture, or improvement and all of its properties and against the lot or lots of land necessarily connected.
    (b) The claimants share the lien proportionately in accordance with the preference provided by Section 53.104.
    Tex. Prop.Code §§ 53.101, 53.105.

9. The parties disagree as to the amount of retained funds to which Bond is entitled. The trial court never made this determination because it found Kagan–Edelman was not liable for statutory retainage. Therefore, we decide only Kagan–Edelman's liability for statutory retainage. On remand, the trial court must determine the amount to which Bond is entitled.

ty, we must determine the extent of his lien. The trial court concluded in conclusion of law three that Bond's lien was only valid against Irwin's leasehold estate. Bond argues that the lien should be valid against Kagan–Edelman's fee interest in the entire Cypresswood Court Shopping Center. We agree with Bond.

In reaching its conclusion, the trial court followed *2811 Associates, Ltd. v. Metroplex Lighting and Electric*, 765 S.W.2d 851, 852 (Tex.App.—Dallas 1989, no writ). Kagan–Edelman urges us, as it urged the trial court, to follow *2811*, citing it for the proposition that when a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor. 765 S.W.2d at 853. This is a correct statement of law, and Bond agrees with this interpretation of *2811*. However, *2811* is distinguishable.

In *2811*, a lessee contracted for lighting supplies for improvement of the leasehold. 765 S.W.2d at 852. The landlord paid the lessee for the supplies according to their lease agreement, but the lessee did not pay Metroplex, the party who furnished the supplies. *Id*. Metroplex claimed damages against the landlord and the lessee, and asserted a statutory mechanic's lien and materialmen's lien against the landlord's building. *Id*. The trial court entered a default judgment against both the landlord and the lessee and foreclosed on the lien against the landlord's property. *Id*.

On appeal, the landlord claimed Metroplex's petition did not state a cause of action, and the appellate court agreed. *2811*, 765 S.W.2d at 852. The appellate court said a lien on real property cannot be established merely by virtue of a contract between a lessee of the property and the materialman. *Id*. The court held that when a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor. *Id*.

The key difference between *2811* and the present case is that the claimant in *2811*, Metroplex, did not assert any claims against the owner for trapped funds or statutory retainage. Metroplex's petition only stated a valid claim against the lessee, not the land-

lord; therefore Metroplex's lien could only be valid against the lessee's leasehold estate. If Metroplex had a valid claim against the landlord, which would have had to be for funds trapping or statutory retainage, then Metroplex could have obtained a valid lien against the landlord's fee interest.

Bond, on the other hand, did assert claims against Kagan–Edelman for both trapped funds and statutory retainage. This is significant because it was these specific claims for funds trapping and statutory retainage that Bond's lien was meant to secure. Bond could not have asserted funds trapping and statutory retainage claims against Irwin. Unlike Metroplex's liens in *2811*, Bond's liens were not meant to secure its independent claims against Irwin.

The trial court erred in conclusions of law three and five; therefore, we set them aside. *See Cain*, 709 S.W.2d at 176; *Airflow Houston*, 849 S.W.2d at 931. Bond has a valid lien against Kagan–Edelman's property, the entire Cypresswood Court Shopping Center.

We sustain Bond's issue one.

### 5. Bond's Claim under Chapter 162 of the Property Code

In Bond's issue two, we are asked to consider whether Kagan–Edelman is liable to Bond on his trust fund claim under Chapter 162 of the Property Code. Having determined that Kagan–Edelman is liable to Bond under Chapter 53 of the Property Code, we need not decide whether it is liable under Chapter 162.

### 6. Gateway's appeal

In its only issue presented on appeal, Gateway argues the trial court erred in determining that its mechanic's lien attached only to Irwin's leasehold and not to Kagan–Edelman's fee simple interest because of a lack of contractual relationship. Like Bond's issue one, this is a challenge by Gateway to the trial court's conclusion of law three.

Gateway delivered supplies to Bond that were used in the construction of the restaurant on May 23, 1994. At that time, as we have found, Irwin was not only Kagan–Edelman's lessee, but was also acting as its origi-

nal contractor. Like Bond, Gateway was a subcontractor entitled to a lien effective on May 23, 1994.

The cost of Gateway's unpaid goods and services was $13,306.17. On August 3, 1994, Gateway sent notice of the unpaid balance and demand for payment to Irwin and Kagan–Edelman. On August 11, 1994, Gateway filed an affidavit for mechanic's lien and materialmen's lien against the real property owned by Kagan–Edelman. Despite receiving the notices of Gateway's claims, Kagan–Edelman paid Irwin the agreed construction price of $27,732.

Gateway asserted claims against Kagan–Edelman for funds trapping and statutory retainage. Because Gateway gave Kagan–Edelman the notice required under the Property Code, and Kagan–Edelman paid Irwin after receiving notice, Kagan–Edelman is liable to Gateway for the funds it trapped and the amount that should have been retained. Gateway's lien is valid against the entire Cypresswood Court Shopping Center.

We sustain Gateway's issue one.

### D. Summary

We hold Kagan–Edelman is liable to Bond and Gateway on their claims for funds trapping and statutory retainage under the Property Code, and Bond and Gateway have valid liens against the entire Cypresswood Court Shopping Center. Therefore, we reverse the trial court's judgment with respect to Bond and Gateway's claims against Kagan–Edelman. Our findings are confined to Kagan–Edelman's liability only, therefore, we remand the case to the trial court to (1) determine the amount of funds Kagan–Edelman owes Bond and Gateway on their funds trapping claims; (2) determine the amount of funds Kagan–Edelman owes Bond and Gateway on their statutory retainage claims; and (3) consider the issue of attorney's fees.

We reverse the trial court's judgment and remand for proceedings consistent with this opinion.