# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00802-CV

**Gem Stokes and John Jay Stokes, Jr., Appellants**

**v.**

**Anthony P. Ferris, Trustee for Richard Ferris, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. 98-03177, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Anthony P. Ferris as trustee for Richard Ferris (Ferris) sued appellants John Jay Stokes, Jr. (Jay Stokes) and Gem Stokes for violations of the fraudulent-transfer statute, seeking to void a transfer of money from Jay Stokes to Gem Stokes. The district court found in favor of Ferris and ordered appellants to turn over $1,033,280 to Ferris. In addition, the jury found that Ferris was entitled to recover $5,528,059.87 from Jay Stokes in exemplary damages. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1984, Jay Stokes sought to sell real estate he claimed he owned. In January of 1985, before finding a buyer, Jay Stokes's home and office, which were not located on the real estate Jay Stokes was attempting to sell, caught fire. Jay Stokes's insurance carrier, State Farm, refused

to pay for the damages to his home and office. On March 19, 1985, Jay Stokes finally sold the real estate he claimed he owned to Ferris for $550,000. Ferris received a deed for the property that was allegedly executed by Jay Stokes.

In January of 1986, Ferris was informed by John Stokes, Sr., the father of Jay Stokes, that (1) the deed transferring the property from Jay Stokes to Ferris was a forgery and (2) John Stokes, Sr. was the lawful owner of the property. John Stokes, Sr. filed a lawsuit against Jay Stokes and Ferris to reclaim his property. Around the same time, Jay Stokes entered into a secret agreement that assigned certain claims, including his claim against State Farm, to his mother Gem Stokes in exchange for financial support for two to five years.

After John Stokes, Sr. filed suit against Jay Stokes and Ferris to reclaim his property, handwriting experts confirmed that the deed allegedly executed by Jay Stokes was a forgery. Ferris then filed a cross-claim against Jay Stokes for the return of the money that was paid for the property. On October 29, 1987, the district court found the deed was a forgery and entered a judgment by default against Jay Stokes. On the same day, Jay Stokes filed for bankruptcy.

After the bankruptcy stay was lifted, Ferris obtained a judgment against Jay Stokes for $1.7 million based on fraud. Ferris returned the disputed property to John Stokes, Sr., but Jay Stokes did not return the amount of the purchase price to Ferris. The judgment against Jay Stokes was never satisfied.

In 1998, Jay and Gem Stokes recovered $1,033,280 in the fire-claim lawsuit against State Farm. After learning Jay Stokes had assigned his fire claim to Gem Stokes and that appellants had been awarded $1,033,280 from State Farm, Ferris immediately filed this lawsuit against

2

appellants seeking monetary damages. The district court entered final judgment ordering that (1) the transfer of the proceeds obtained in the State Farm trial by appellants is void; (2) any subsequent transfer of the proceeds obtained in the State Farm trial by appellants is void; (3) appellants are permanently enjoined from transferring the proceeds obtained in the State Farm trial; (4) appellants are to turn over all proceeds obtained in the State Farm case to Ferris; and (5) Ferris is entitled to an award of exemplary damages in the amount of $5,528,059.87 against Jay Stokes. Appellants filed a motion for new trial and a motion to modify the judgment, which were denied by the district court.

Appellants jointly argue on appeal that the district court erred because: (1) it misstated the law in the jury charge by failing to include one of the elements of section 24.02(b) of the pre-1987 fraudulent-transfer statute; (2) it assessed a money judgment against appellants, which is a remedy available under the 1987 fraudulent-transfer statute but not the pre-1987 statute; (3) it failed to enter a take-nothing judgment against Ferris because, by applying the 1987 version of the fraudulent-transfer statute in awarding monetary damages, the court was required to follow section 24.001(a)(1) of the 1987 fraudulent-transfer statute that has a four-year statute of limitations with a one-year discovery rule; (4) it declared any subsequent transfer of the funds obtained in the State Farm case null and void and failed to submit to the jury separate fact questions regarding subsequent transfers; (5) it ordered a permanent injunction prohibiting the transfer of any proceeds in the amount of $1,033,280 because the pleadings were not sufficient to warrant a permanent injunction; (6) the evidence is factually insufficient to support the jury's finding of when Ferris, through reasonable diligence, should have discovered the transfer from Jay Stokes to Gem Stokes; (7) the evidence is legally insufficient to support the finding that appellants violated the pre-1987 fraudulent-transfer

3

statute; and (8) the evidence is factually insufficient to support the finding that appellants violated the pre-1987 fraudulent-transfer statute.

In addition, appellant Jay Stokes, individually, raises the following three issues on appeal: (1) the evidence is not clear and convincing that appellants violated the pre-1987 fraudulent-transfer statute, which is necessary to assess exemplary damages; (2) the evidence is legally insufficient to support the award of exemplary damages; and (3) the evidence is factually insufficient to support the award of exemplary damages.

Appellant Gem Stokes, individually, also raises two issues on appeal arguing that the district court erred by (1) including a turnover order in the final judgment because a turnover order should be the subject of a separate action under section 31.002 of the Texas Civil Practice and Remedies Code and (2) prohibiting counsel for Gem Stokes from finishing his argument that the evidence was insufficient to show that Gem Stokes had committed a fraudulent transfer under the pre-1987 statute.

## DISCUSSION

**Fraudulent-Transfer Jury Charge**

In their first issue, appellants contend that the district court erred by misstating the law in the court's charge over appellants' objection by failing to include an element of the pre-1987 fraudulent-transfer statute. We review a claim that a trial court failed to give a particular instruction or definition in a jury charge under an abuse-of-discretion standard. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451-52 (Tex. 1997); *McReynolds v. First Office Mgmt.*, 948 S.W.2d 342, 344 (Tex. App.—Dallas 1997, no writ). When determining whether a trial court abused its discretion, we

4

cannot substitute our judgment for that of the trial court. *McReynolds*, 948 S.W.2d at 344. We "may only decide whether the trial court's action was arbitrary or unreasonable." *Id.* (citing *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex. 1970)); *European Crossroads Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 54 (Tex. App.—Dallas 1995, writ denied).

The trial court is required to "submit such instructions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. When reviewing a jury instruction on appeal, the question is whether the jury instruction was proper. *M.N. Dannebaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App.—Houston [14th Dist.] 1992, writ denied). For an instruction to qualify as proper, the instruction must (1) assist the jury, (2) be supported by the pleadings, and (3) accurately state the law. *Texas Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000) (citing Tex. R. Civ. P. 278; *Criswell*, 910 S.W.2d at 54). An explanatory instruction will be considered improper only if it misstates the law as applicable to the facts. *Dannebaum*, 840 S.W.2d at 631.

The purpose of the fraudulent-transfer statute is to prevent debtors from removing property from the reach of their creditors. *Kaufmann v. Morales*, 93 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Harrisburg Nat'l Bank v. Geo. C. Vaughan & Sons*, 204 S.W.2d 9, 12 (Tex. Civ. App.—Galveston 1947, writ dism'd). The charge given to the jury tracked the language of section 24.02(a) of the pre-1987 Texas Business and Commerce Code.[1] Appellants

---

[1] Prior to 1987, section 24.02 of the Texas Business and Commerce Code provided as follows:

5

argue that the jury instruction should also have contained language from section 24.02(b) of the pre-1987 statute. Former section 24.02(b) concerns whether the title transferred to a purchaser for value is void if the purchaser lacks knowledge of fraudulent intent, but it is limited to cases where a *title* has been transferred. *See* Former Tex. Bus. & Comm. Code Ann. § 24.02(b).

In this case, Jay Stokes assigned to Gem Stokes the right to certain claims, including claims made on insurance policies for Jay Stokes's home and office for fire damage. Former section 24.02(b) does not apply to the transfer of a claim for potential lawsuits because a claim to a lawsuit

---

Sec. 24.02.  Transfer to Defraud is Void.

(a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

    (1) delay or hinder any creditor, purchaser, or other interested persons from obtaining that to which he is, or may become, entitled; or

    (2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

(b) The title of a purchaser for value is not void under Subsection (a) of this section unless he purchased with notice of

    (1) the intent of his transferor to delay, hinder, or defraud; or

    (2) the fraud that voided the title of his transferor.

Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 24.02, 1967 Tex. Gen. Laws 2343, 2598 (current version at Tex. Bus. & Comm. Code Ann. §§ 25.005, 24.009 (West 2002)) (hereinafter Former Tex. Bus. & Comm. Code Ann. § 24.02).

is personal property and not real property. *See Texas Mun. League v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 387 (Tex. 2002) (personal property "means a claim, right, or interest that has value but cannot be measured or perceived by the senses"); *see also* Tex. Tax Code Ann. § 1.04(6) (West 2001). No title to real property was transferred between Jay Stokes and Gem Stokes. Therefore, because former section 24.02(b) does not apply in this case, the jury instruction that excluded former section 24.02(b) did not "misstate the law as to the applicable facts." *Dannebaum*, 840 S.W.2d at 631. In addition, rather than assisting the jury, the instruction might have confused the jury by raising an irrelevant issue. *See Mandlbauer*, 34 S.W.3d at 912. Because the district court's decision to exclude former section 24.02(b) from the jury instruction was not a clear abuse of discretion, we overrule appellants' first issue.

**Money Judgment**

Appellants claim that the district court erred in assessing a money judgment against them. When reviewing an application of law, we use a de novo standard of review. *Abbott v. Blue Cross & Blue Shield of Tex., Inc.*, 113 S.W.3d 753, 762 (Tex. App.—Austin 2003, pet. denied) (citing *TeleVentures, Inc. v. International Game Tech.*, 12 S.W.3d 900, 907 (Tex. App.—Austin 2000, pet. denied)). The conclusions of the trial court "will be upheld unless they are erroneous as a matter of law." *Id.* at 762 (citing *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ)).

Appellants contend that the district court, in effect, used the 1987 fraudulent-transfer statute in providing a monetary remedy when the applicable pre-1987 fraudulent-transfer statute did

7

not authorize a monetary recovery. Appellants argue that while the pre-1987 fraudulent-transfer statute authorized a court to void a fraudulent transfer, it did not authorize a court to issue a money judgment against appellants.

We find appellants' arguments to be without merit. First, even though the post-1987 version of the fraudulent-transfer statute specifically provides for a monetary remedy, that does not mean that the pre-1987 statute *prohibited* a monetary remedy. At most, the pre-1987 fraudulent-transfer statute is silent on the possibility of a monetary remedy. In *Airflow Houston, Inc. v. Theriot*, another fraudulent-transfer case involving the pre-1987 statute, the court of appeals upheld the imposition of a monetary judgment against Airflow even though a monetary judgment was not specifically provided for in the pre-1987 statute. 849 S.W.2d 928, 933-34 (Tex. App.—Houston [1st Dist.] 1993, no writ). The court of appeals looked to the 1987 fraudulent-transfer statute for guidance and noted that the provision of the 1987 statute allowing for "any other relief the circumstances may require" justified a monetary award under the pre-1987 statute. *Id.* at 934.

Second, by the time of the jury trial, the fire claim was no longer an unmatured cause of action but had been reduced to a money judgment following appellants' recovery of $1,033,280 from State Farm. If appellants' contention is correct that the only remedy available to the district court would be to void the transfer of claims to Gem Stokes, appellants would still be in possession of a $1,033,280 money judgment against State Farm. This would result in no remedy for Ferris and would, in effect, eviscerate the purpose of the pre-1987 fraudulent-transfer statute. Although the pre-1987 statute is silent regarding monetary remedies, the authority to enter a money judgment, especially where the transferred claim has been reduced to cash, is implicit in the statute. We cannot

8

conclude that the district court's imposition of a monetary award was erroneous as a matter of law. Therefore, we overrule appellants' second issue.

**Statute of Limitations**

Appellants' third issue is that the district court erred in failing to enter a take-nothing judgment against Ferris. Appellants argue that because the district court, in effect, applied the post-1987 version of the fraudulent-transfer statute to assess a money judgment against appellants, the court is obligated to follow section 24.010(a)(1) of the 1987 fraudulent-transfer statute, which sets out a four-year statute of limitations with a one-year discovery rule. Tex. Bus. & Comm. Code Ann. § 24.010(a)(1) (West 2002).

However, we have already concluded that the district court did not use the post-1987 statute; rather, the remedy the district court provided was available under the pre-1987 statute. Under the applicable pre-1987 law, the statute of limitations for a fraudulent transfer claim was four years. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 16.004, 1985 Tex. Gen. Laws 3242, 3252; *Andes v. Cagle*, 468 S.W.2d 513, 516 (Tex. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).

The jury found that Ferris, using reasonable diligence, should have discovered the fraudulent transfer on October 6, 1994. Ferris filed the lawsuit in question on March 26, 1998, well within the four-year statute of limitations. Therefore, the district court correctly concluded that the Ferris lawsuit was timely filed. We overrule appellants' third issue.

**Subsequent Transfers**

Appellants' fourth issue claims that the district court erred in ordering any subsequent transfers of the funds null and void because any later transfer of the funds after the Harris County District Court ordered they be paid to Gem Stokes constitutes a new transfer, which requires that additional fact questions be submitted to the jury. Additionally, appellants claim the order is vague and ambiguous in violation of due process under article 1, section 19 of the Texas Constitution.

Ferris elicited testimony at trial that after Gem Stokes was awarded $1,033,280 from State Farm for the fire-claim lawsuit and after she received a check from State Farm, she purchased a rolling suitcase and proceeded to the bank to cash the check. After cashing the check, Gem Stokes placed the cash in the suitcase, rolled the suitcase out of the bank and across the parking lot, and gave the suitcase to a friend.

Once the jury determined that Gem Stokes had no right to the judgment proceeds from the lawsuit against State Farm, any subsequent transfer of the money by Gem Stokes would necessarily be void as well. The district court therefore ordered that, with regard to the funds appellants were awarded from State Farm, "any subsequent transfer of those funds by Gem Stokes is hereby set aside and is null and void. The proceeds in the amount of $1,033,280.00 are to be returned to . . . Ferris."

Under the pre-1987 fraudulent-transfer statute, if the court determines a transfer of claims is fraudulent and void, the court is empowered to put the parties in their original positions. If appellants' argument were correct, then a person guilty of fraudulently transferring money could prevent the injured party from obtaining redress by simply having the transferee transfer the money

10

again. In order to avoid this inequitable result, which cannot be sanctioned by the fraudulent-transfer statute, declaring any subsequent transfer void is a necessary and implicit part of the statute.

Because the district court's conclusion that any subsequent transfer by Gem Stokes is void as a matter of law, the district court did not err by failing to submit a jury question asking the jury whether the subsequent transfer was void. Further, the order, which clearly specified the parties involved and the action to be done, does not violate due process because the order was neither vague nor ambiguous. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). We therefore overrule appellants' fourth issue.

**Permanent Injunction**

By their fifth issue, appellants contend that the district court erred by ordering a permanent injunction prohibiting the transfer of any proceeds in the amount of $1,033,280. Citing *Hues v. Warren Petroleum Co.*, appellants argue that Ferris's pleadings were not sufficient to warrant a permanent injunction. *See* 814 S.W.2d 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied). "The grant or refusal of a permanent injunction is ordinarily within the sound discretion of the trial court, and the trial court's action will not be disturbed absent a clear abuse of discretion." *Id.* at 529 (citing *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1990, no writ)). Moreover, in *Hues*, the court of appeals upheld the trial court's decision to *deny* an injunction because the "[a]ppellants did not pray for injunctive relief nor plead the specific type of injunctive relief sought." *Id.* at 530.

In this case, when filing his First Amended Petition, Ferris stated that he had previously filed an application for a temporary restraining order and temporary and permanent

11

injunction. Ferris also requested that the district court issue a permanent injunction "in accordance" with his original application for a temporary restraining order. The original application asked the court to issue a temporary restraining order to prevent appellants and their assigns from transferring the funds received from State Farm. Ferris also stated that the application for a temporary restraining order was incorporated into the petition for all purposes.

"A pleading will be liberally construed in favor of the pleader and is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claims." *Troutman v. Traeco Bldg. Sys., Inc.*, 724 S.W.2d 385, 387 (Tex. 1987); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). The application was specific in its terms and the parties involved. The application identified appellants and asked the court to prevent appellants from transferring the money they had obtained from the fire claim. Because the application specifically identified the parties and the relief requested and because the application was referenced in Ferris's First Amended Petition, the petition gave fair and adequate notice of the facts upon which Ferris based his claims. Therefore, the district court did not abuse its discretion by granting a permanent injunction to prohibit appellants and their assigns from transferring the proceeds obtained from the lawsuit against State Farm. We overrule appellants' fifth issue.

**Factual and Legal Sufficiency Issues**

Appellants, jointly and individually, challenge the legal and factual sufficiency of the evidence supporting several of the jury's findings. When reviewing a no-evidence challenge, we consider all the evidence in the light most favorable to the finding, making every reasonable inference in its favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86

12

(Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). More than a scintilla of evidence exists when the evidence supporting the finding as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a factual-sufficiency challenge, we consider all the evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support the finding or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

*Discovery of the Assignment*

Appellants' sixth issue is that the evidence is factually insufficient to support the finding in question number four regarding the date when Ferris, through the exercise of reasonable diligence, should have discovered the transfer.

Robert Bradshaw was hired by Ferris to represent Ferris in the lawsuit involving John Stokes, Sr., Jay Stokes, and Ferris. Bradshaw was also hired by Ferris to monitor the fire claims Jay Stokes had filed against State Farm. Bradshaw had periodic conversations with State Farm's attorneys and in October 1994 Bradshaw learned for the first time from State Farm's attorneys that Jay Stokes had assigned his claim against State Farm to Gem Stokes.

The language of the 1986 assignment agreement between Jay Stokes and Gem Stokes indicated that both parties intended to keep the assignment of claims a secret. The agreement stated that the document "is not intended as a public document" and that Jay and Gem Stokes "agree to

13

keep this agreement private." The assignment agreement further stated that the purpose of the assignment is to "protect Gem's fragile health from personal assaults by the legal community of Jay's potential adversaries in the assigned cases."

Appellants argue that Ferris should have discovered the assignment before October 1994 because Jay Stokes had given the bankruptcy trustee a copy of the assignment in 1987 or 1988. However, in Jay Stokes's amended bankruptcy schedule, when asked if any person was holding anything of value in which Jay Stokes had an interest, Gem Stokes was not listed and there was no mention of the assignment. Neither the original assignment nor a copy of the assignment was produced during the bankruptcy trial.

Appellants further argue that Ferris should have discovered the existence of the assignment earlier than October 1994 because the assignment to Gem Stokes was listed in a motion for continuance, dated June 29, 1988, in the lawsuit with State Farm over the fire damage to Jay Stokes's home and office. However, Ferris was not involved in that lawsuit, was not involved in the discovery process, and was not provided with any of the filings of the lawsuit. In addition, the assignment agreement, by its own terms, was to be kept private to prevent people like Ferris, who had a claim against Jay Stokes, from learning of its existence.

Because the evidence is not so weak that the jury's finding should be set aside, we conclude that there is factually sufficient evidence to support the jury finding that the date upon which Ferris should have discovered the transfer was October 6, 1994. We overrule appellants' sixth issue.

14

*Appellants' Violation of the pre-1987 Fraudulent-Transfer Statute*

Appellants argue that the evidence is legally and factually insufficient to support the jury's finding that appellants violated the pre-1987 fraudulent-transfer statute. Appellants contend that there was no proof that Gem Stokes, at the time of the assignment, had knowledge of an intent to hinder any potential creditors of Jay Stokes. They also argue that knowledge is necessary in order for the assignment to be a fraudulent transfer because valuable consideration was paid for the assignment: namely, Gem Stokes's continued support of Jay Stokes.

As proof that Gem Stokes did not have a desire to hinder any potential creditors of Jay Stokes, appellants note that Ferris's own attorney, prior to this case, believed that the fire claim was of little, if any, value. Appellants also point to the facts that Gem Stokes was not involved in the land sale between Jay Stokes and Ferris, the lawsuit between Jay Stokes, John Stokes, Sr., and Ferris, or the bankruptcy proceeding. Appellants further contend that the assignment was made public when it was disclosed to the bankruptcy trustee and was listed in a motion for continuance. Finally, appellants assert that the assignment dealt only with the fires in Jay Stokes's home and office and had nothing to do with the land sale between Jay Stokes and Ferris.

However, the assignment agreement between Gem Stokes and Jay Stokes, which was signed by both parties, indicates that one of the purposes of the assignment was to keep the assigned claims from Jay Stokes's creditors. The document states that the agreement "is not intended as a public document" and that "both parties agree to keep this agreement private." The assignment agreement also states that the purpose of the agreement is "to protect Gem's fragile health from personal assaults by the legal community of Jay's potential adversaries in the assigned cases." After

15

receiving a monetary award from the State Farm fire-claim lawsuit, Gem Stokes purchased a suitcase, cashed the $1,033,280 check, placed the cash in the suitcase, and transferred the money to one of Gem Stokes's friends.

The above evidence constitutes more than a scintilla of evidence that would allow a jury to conclude that Gem Stokes had the requisite intent to prevent Jay Stokes's creditors from gaining access to one of his assets and demonstrates an intent to engage in a fraudulent transfer. The evidence is legally and factually sufficient; therefore, we overrule appellants' issue regarding the legal and factual sufficiency of the evidence in support of the jury's finding that appellants violated the pre-1987 fraudulent-transfer statute.

*Exemplary Damages*

Jay Stokes individually argues that (1) the evidence is not clear and convincing that appellants violated the pre-1987 fraudulent transfer statute as a predicate to assessing exemplary damages and (2) the evidence is legally and factually insufficient to support the exemplary damages award.

When reviewing an award for exemplary damages, an appellate court reviews the evidence to see if clear and convincing evidence supports the award. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(b) (West 2004). Clear and convincing evidence means "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). The purpose of issuing exemplary damages is to punish a wrongdoer and to deter others from engaging in similar conduct.

16

*Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 49 (Tex. 1998); *Moriel*, 879 S.W.2d at 16. The purpose is not to provide compensation to an injured party. *Malone*, 972 S.W.2d at 49. Exemplary damages are awarded against a defendant in order "to punish the defendant for outrageous, malicious, or otherwise morally culpable conduct." *Moriel*, 879 S.W.2d at 16; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (West 2004).

Jay Stokes sold property to Ferris that he did not legally own. Jay Stokes did not return the money with which Ferris attempted to purchase the property, even after a default judgment was entered against Jay Stokes. Despite numerous collection attempts, Stokes has yet to pay the money judgment. After Stokes's house caught fire, he assigned his claim against his insurance company to Gem Stokes in an agreement that by its own terms was intended to be kept from public knowledge and to prevent assaults by Jay's potential creditors. When Gem Stokes ultimately received $1,033,280 from the fire-claim lawsuit, Jay Stokes accompanied his mother to the bank when she cashed the check, placed the money in a suitcase, and handed it to one of Gem Stokes's friends.

Jay Stokes's behavior shows a clear effort to prevent Ferris from obtaining the money judgment awarded by the district court and from recovering the original purchase price for the property Stokes fraudulently sold to Ferris. The evidence is legally and factually sufficient to support the exemplary-damages award. Moreover, because the evidence produces in the mind of the trier of fact a firm belief of the truth of the allegations sought to be established, the evidence is clear and convincing that appellants violated the pre-1987 fraudulent-transfer statute. *See Moriel*, 879 S.W.2d at 16. We overrule Jay Stokes's issue regarding exemplary damages.

**Turnover Order**

Gem Stokes individually asserts that the district court erred by issuing what is, in effect, a turnover order in the final judgment. The court ordered that the proceeds obtained in the fire-claim lawsuit be given to Ferris. Gem Stokes contends that a turnover order should be the subject of a separate action under section 31.002 of the Texas Civil Practice and Remedies Code. We review legal conclusions of a trial court de novo. *Abbott*, 113 S.W.3d at 762 (citing *Westech*, 835 S.W.2d at 196).

In the district court's final judgment, the transfer of claims from Jay Stokes to Gem Stokes, and any subsequent transfers, were declared void because the transfers were fraudulent. If a district court is not allowed to order that the proceeds be turned over to a creditor who has been unable to collect a judgment because the debtor has fraudulently transferred assets to another individual, then the fraudulent-transfer statute would lose all its meaning. *See generally Airflow*, 849 S.W.2d at 934. Because the power to do so is implicit in the pre-1987 fraudulent-transfer statute, the district court did not err by ordering that the proceeds obtained in the fire-claim lawsuit be turned over to Ferris. We overrule Gem Stokes's issue regarding the turnover order.

**Prohibiting Gem Stokes's Counsel From Finishing his Argument**

Gem Stokes's final issue is that the district court erred by prohibiting her counsel from finishing his argument that the evidence was insufficient to support Ferris's claim that Gem Stokes had committed a fraudulent transfer under the pre-1987 statute. "The discretion vested in the trial court over the conduct of a trial is great." *Dow Chem. Co. v. Francis*, 46 S.W.2d 237, 240 (Tex.

18

2001). A trial court may "intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Id.* at 241.

Gem Stokes has failed to support this issue with legal argument, and our review of the record reveals nothing to indicate that the district court abused its discretion. We therefore overrule Gem Stokes's final issue.

## CONCLUSION

Because we overrule all of appellants' issues on appeal, we affirm the judgment of the district court.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: May 13, 2004

19