**SUPERIOR DERRICK SERVICES, INC. & Champion Manufacturing Industries, Inc., Appellants,**

v.

**Arnold ANDERSON, d/b/a Electrodyne, Appellee.**

**No. C14–90–00543–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 7, 1992.

Rehearing Denied June 18, 1992.


Michael L. Durham, Houston, for appellants.

E.L. Atkins, Arlington, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

Superior Derrick Services, Inc. and Champion Manufacturing Industries, Inc. appeal from a judgment awarding appellee, Arnold Anderson, d/b/a Electrodyne, $99,500.00 on his claim on a sworn account for the sale of four workover rig masts. Appellants raise eleven points of error challenging the trial court's findings of fact on both legal and factual insufficiency grounds, challenging the admission of certain evidence, and challenging the trial court's conclusions of law. Because we find no evidence supporting the trial court's award of damages for one of the masts, we modify the judgment to delete the award of damages for this mast. As so modified, we affirm.

Pursuant to a purchase order dated January 12, 1982, appellee, Electrodyne agreed to design and manufacture several 104-foot, 210,000 pound masts for appellant, Champion, to utilize in the oil and gas industry. This purchase order describes the item as follows:

All 1982 requirements for 210 K masts— Min. of (8) eight masts, (16) sixteen forecast.

Price, through March 1983 will be $53,000.00 per mast assembly.

MAST ASSEMBLY TO INCLUDE:

a. 104′, 210,000 pound mast designed and built to AISC and API specifications.

b. Hydraulic telescoping cylinder, installed.

c. Racking board & safety railings.

d. Rod basket and paramont [sic] 104 rod hangers.

e. ladder & crown safety platform.

f. Original Drawings and calculations, bearing the approval stamp of a Registered Texas Professional Engineer. Delivery to be two (2) units per month, beginning first week of March, 1982.

The addressee on this purchase order is Electrodyne and the "ship to" space contains Champion's name and address. The remainder of the form, bearing Superior's name at the top and above the signature line, is preprinted. The purchase order is unsigned and other pre-printed terms and shipping specifications are blank.

Appellee developed the design and shop drawings which appellants approved. Mast 1 was inspected before completion by appellants in March 1982. Appellants found it excessively heavy. Appellants' witnesses testified that appellants rejected this mast. Appellee Anderson testified that appellants said they would find a use for Mast 1. Appellants did not pay for this mast.

Appellants and appellee redesigned the mast specifications for a lighter mast. Mast 2 was inspected and approved. Appellee delivered this mast to appellant Champion and received payment from appellant Superior in April 1982. Champion subsequently discovered defects and requested and received a $15,000.00 credit on this mast.

Mast 3 was inspected, approved, and shipped to appellant Champion in June 1982, before attempted repairs to Mast 2. Appellant Superior paid appellee $26,500 for Mast 3 in August 1982. Appellant Champion then cancelled the remainder of the purchase order. At the time of cancelation, appellee had completed approximately 60% of Mast 4.

On June 4, 1984, appellee filed suit against appellants seeking the balance due under the purchase order. In their first amended answer, appellants claimed the account alleged in appellee's petition was not due and denied that appellee performed all conditions precedent to his right of recovery. Appellants also alleged the masts tendered did not conform to the contract specifications. Appellants further filed a counterclaim for breach of contract, breach of warranty, and violation of the Texas DTPA, seeking recovery of the costs of repairing the masts received.

■ In points of error one and two, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's findings that appellee manufactured four masts which were conforming goods as that term is defined by TEX.BUS. & COM.CODE ANN. § 2.106. Because we have

a statement of facts, the trial court's findings of fact are not conclusive. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). In reviewing the trial court's findings of fact for legal and factual sufficiency of the evidence supporting them, we apply the same standards as we apply in reviewing the sufficiency of the evidence supporting a jury's finding. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Thus, in reviewing appellant's legal insufficiency points, we may consider only the evidence and inferences, viewed in their most favorable light, that tend to support the trial court's finding, disregarding all evidence to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, we must uphold the finding. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988).

■ In reviewing appellant's claim of factual insufficiency, we must examine all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). We may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ The trial court found that appellants accepted Masts 1–3 and that Mast 4 was substantially complete and identified to the purchase order when appellants notified appellee they would neither accept nor purchase any additional masts under the purchase order. The trial court concluded that the four masts were conforming goods and that any defects did not substantially impair the value of the contract so as to excuse or justify appellants' cancellation or repudiation of the agreement.

Section 2.106(b) provides:

Goods or conduct including any part of a performance are "conforming" or conform to the contract when they are in accordance with the obligations under the contract.

TEX.BUS. & COM.CODE ANN. § 2.106(b) (Vernon 1968). If the contract is an installment contract, a buyer may reject any installment that is non-conforming "if the non-conformity substantially impairs the value of that installment and cannot be cured...." TEX.BUS. & COM.CODE ANN. § 2.612(b) (Vernon 1968). Comment 5 to § 2.612 provides that cure of a non-conformity can be afforded by an allowance against the price. TEX.BUS. & COM.CODE ANN. § 2.612, comment 5 (Vernon 1968). Section 2.612(c) provides that when "a non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole." The aggrieved party, however, reinstates the contract "if he accepts a non-conforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments." TEX.BUS. & COM. CODE ANN. § 2.612(c) (Vernon 1968).

Appellants discuss evidence that they assert establishes the masts were non-conforming goods. This consists of testimony by appellants' expert regarding various defects in the masts. The evidence also showed, however, that an engineer employed by appellants inspected the masts in detail before requesting shipment of the masts. Appellee admitted that the masts were not completely assembled when delivered because appellant planned to paint the masts after delivery. When appellants discovered that the legs of Mast 2 were not completely straight, appellee testified that, rather than returning the mast to appellee for repairs, appellee thought it would be more cost effective for appellants to correct the problems at appellants' yard. The evidence showed that appellants agreed with this method of repairing the mast and that appellee agreed to give appellants a credit of $15,000.00 for the repair of this mast. After acceptance of Mast 3, appellants discovered similar waviness in the legs of Mast 3. Appellee was paid only $26,500.00 for this mast, or half the agreed purchase price.

We find sufficient evidence supporting the trial court's conclusion that the masts were conforming goods under § 2.612. The testimony showed that the defects were curable and under § 2.612, an installment is non-conforming only if the non-conformity substantially impairs the value of the installment and the non-conformity cannot be cured. *See* Tex.Bus. & Com.Code Ann. § 2.612(b) (Vernon 1968). We overrule points of error one and two.

In points of error three and four, appellants claim that no evidence or insufficient evidence supports the trial court's findings that appellants anticipatorily repudiated and breached their agreement with appellee. Under these points of error, appellants present essentially the same argument as under points of error one and two, that the masts were non-conforming goods and that the non-conformity substantially impaired the value of the contract thereby justifying appellant's cancellation of the contract. Because we have previously held that sufficient evidence supports the trial court's conclusion that the masts were conforming goods, appellants' cancellation or repudiation of the remainder of the purchase order was unjustified. We hold that there was sufficient evidence to support the trial court's related conclusion that appellants anticipatorily repudiated the contract. We overrule points three and four.

In points of error five and six, appellants claim there is no evidence, or alternatively, there is insufficient evidence, to support the trial court's findings that appellee delivered four masts to appellants. In Finding of Fact No. 21, the trial court found there was no agreement between the parties concerning delivery of the masts. The court further found that appellants accepted delivery of the first mast at appellee's facility and agreed to make arrangements for transporting that mast, but never did so and abandoned this mast at appellee's facility. Appellants also challenge Finding of Fact No. 29, in which the trial court found that, when appellants notified appellee of their refusal to accept or purchase additional masts, the fourth mast was substantially complete and was identified to the purchase order. Based on these find-

ings, the trial court concluded that title passed upon identification of the masts to the purchase order.

■ ■ Appellants contend that appellee's claim was an action on a sworn account. If we were to determine that appellee raised only an action on a sworn account, appellants' verified denial of the claim required appellee to show the following elements of a common law action on account:

(1) That there was a sale and delivery of goods;

(2) That the account is just because the prices were charged in accordance with an agreement or are the usual, common, customary and reasonable prices for the goods; and

(3) That the amount is unpaid.

*Nichols v. William A. Taylor, Inc.,* 662 S.W.2d 396, 398 (Tex.App.—Corpus Christi 1983, no writ). *See Maintain, Inc. v. Maxson–Mahoney–Turner, Inc.,* 698 S.W.2d 469, 471 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Whether or not actual delivery of the goods occurred, a plaintiff bringing an action on a sworn account must show that title to the goods passed from the seller to the buyer. *See Land Liquidators of Texas, Inc. v. Houston Post Co.,* 630 S.W.2d 713, 714 (Tex.App.—Houston [14th Dist.] 1982, no writ); *T.J. Service Co. v. Major Energy Co., Inc.,* 552 S.W.2d 598, 600 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

■ Appellants claim there was no evidence, or insufficient evidence, of delivery of Masts 1 and 4. As to Mast 1, appellants contend they properly rejected this mast. As to Mast 4, appellants argue that this mast was not substantially complete at the time of cancellation of the contract and was never delivered. Appellee responds that the purchase order was silent as to delivery. Thus, the trial court had to determine whether the masts were delivered under § 2.308 or whether they were identified to the contract under § 2.704. Title to goods cannot pass under a contract for sale before identification of the goods to the contract. Tex.Bus. & Com.Code Ann. § 2.401(a) (Vernon 1968). Where there is no explicit

agreement regarding identification of the goods, identification occurs when goods are "shipped, marked, or otherwise designated by the seller as goods to which the contract refers...." TEX.BUS. & COM.CODE ANN. § 2.501(a)(2) (Vernon 1968). Unless explicitly agreed otherwise, § 2.401 provides that title to goods "passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...." TEX.BUS. & COM.CODE ANN. § 2.401(b) (Vernon 1968). In the absence of an agreed place for delivery, § 2.308 provides for delivery at the seller's place of business. TEX.BUS. & COM.CODE ANN. § 2.308(1) (Vernon 1968). The purchase order in this case included no terms regarding delivery.

As to Mast 1, the evidence was conflicting. Appellee, Anderson, testified that appellants inspected this mast and found it too heavy. Anderson testified that appellants did not reject this mast, but said they would use it later, on a different rig. This mast remained at appellee's facility. Two Champion employees, Tony Deering and Frank Miller, testified that they rejected this mast. Although appellants' evidence contradicted Anderson's testimony, the trial court as trier of fact was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Thus, we find sufficient evidence to support the trial court's finding that appellants accepted delivery of Mast 1 at appellee's facility, but later abandoned this mast. Merely because Mast 1 was never shipped to appellants does not preclude the trial court from finding that title in this mast passed to appellants under § 2.308 and that this was sufficient to satisfy the requirement of delivery.

■ Appellants also claim there was no evidence of delivery of Mast 4, as required in a suit on a sworn account and thus, the trial court erred in allowing appellee to recover damages for this mast. Although the trial court found delivery of the first three masts, there is no finding of fact regarding delivery of Mast 4. Rather, the trial court found that this mast was identified to the contract. The trial court's conclusions of law regarding damages indicate that the trial court awarded appellee $53,000.00, or the full contract price, for Mast 4.

Appellee argues that a suit on a sworn account is essentially a breach of contract action. Alternatively, appellee contends there was evidence of delivery of Mast 4. We disagree with appellee's first argument. Rule 185 sets forth the requirements for bringing a suit on a sworn account. *See* TEX.R.CIV.P. 185. This rule is not one of substantive law, but is "a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery." *Rizk v. Financial Guardian Ins. Agency, Inc.,* 584 S.W.2d 860, 862 (Tex.1979). Under rule 185, a party may bring a claim for liquidated damages for "personal service rendered, or labor done or labor or materials furnished...." TEX.R.CIV.P. 185. Where the claim involves the sale of goods, case law interprets this rule to require sale and delivery of the goods, *see Nichols,* 662 S.W.2d at 398, or that title to the goods had passed to the buyer. *See T J Serv. Co.,* 552 S.W.2d at 680. Under § 2.401, title to goods passes to the buyer at the time and place of delivery. *See* TEX.BUS. & COM.CODE ANN. § 2.401(b) (Vernon 1968).

Here, the trial court made no finding regarding delivery or passage of title. Instead, the trial court found that Mast 4 was substantially complete and identified to the contract, and thus, appellee was entitled to recover the entire contract price for this mast. Under § 2.704, an aggrieved seller may identify to the contract any conforming goods not already identified if these goods are in the seller's possession or control when the seller learned of the breach. TEX.BUS. & COM.CODE ANN. § 2.704(a)(1) (Vernon 1968). If the goods are unfinished, however, the UCC allows the seller to complete the manufacture and wholly identify the goods to the contract, cease manufacture and resell for scrap, or proceed in any other reasonable manner. TEX. BUS. & COM.CODE ANN. § 2.704(b) (Vernon 1968).

Mast 4 was never completed, inspected, accepted, or shipped to appellants. Anderson testified that this mast was approximately 60% complete at the time appellants cancelled the contract and that he stopped production on this mast at the time of cancellation. Appellants came to appellee's facility and inspected the first three masts and accepted them for shipment. Because the fourth mast was incomplete at the time of cancellation of the contract, appellants never visited appellee's facility to inspect or accept this mast. Anderson testified that he had invested approximately $30,000.00 in this mast. In his answers to appellants' interrogatories, appellee admitted that, of the $53,000.00 contract price, his production cost was $37,767.67 per mast.

Because appellee did not complete manufacture of Mast 4, we disagree with the trial court's finding that this mast was wholly identified to the contract. Furthermore, title to this mast could not have passed to appellants under § 2.401 because appellee had not completed fabrication of this mast and appellants had not inspected or accepted this mast, as the evidence showed for Masts 1–3. Thus, we agree with appellants that no evidence supports recovery under sworn account for Mast 4. We sustain point of error five as it relates to Mast 4. We need not address point of error six.

In points of error seven and eight, appellants challenge the legal and factual sufficiency of the evidence supporting the trial court's holding that appellant Superior and appellant Champion operated as a single business enterprise and were, therefore, jointly and severally liable to appellee. The "single business enterprise" theory involves corporations that "integrate their resources to achieve a common business purpose...." *Paramount Petroleum Corp. v. Taylor Rental Center*, 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In determining whether two corporations had not been maintained as separate entities, the court may consider the following factors: (1) common employees; (2) common offices;

(3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. *Id.*

The trial court's findings of fact included the following findings: (1) that Champion and Superior had a common office; (2) that Champion and Superior had common employees; (3) that Champion and Superior had centralized accounting, maintained by Superior, and Champion had no bank account or checks; (4) that Champion and Superior had interlocking officers; (6) that Champion and Superior had interlocking shareholders; (7) that Superior paid Champion's bills and expenses; (8) that Superior paid the wages and salaries of Champion's employees; (9) that employees of Superior rendered services on behalf of Champion and employees of Champion rendered services on behalf of Superior; (10) that inventory used by Champion was purchased by and in the name of Superior, and (11) that Champion and Superior were inextricably intertwined in their business operations. Based on these findings, the trial court concluded that Superior and Champion operated as a single business enterprise and could be held jointly and severally liable.

As to the finding that Champion and Superior had common offices, the testimony indicated that Champion's offices were in the same building as Superior's offices and that Champion paid rent to Superior for this space. Champion also had its own shop facility. Furthermore, there was no evidence that the two companies had common employees. Thus, we find no evidence supporting the findings that Champion and Superior had common offices and common employees.

As to the findings that Champion and Superior had interlocking officers and shareholders, the evidence shows that Chuck Jeness was a stockholder and officer of both Superior and Champion. Thus, sufficient evidence supports these findings.

As to the findings regarding Champion's bank accounts and Superior's payment of Champion's bills, the evidence shows that Champion had no checking account and Superior paid Champion's employee salaries and other debts directly. Testimony indicated that the two companies executed agreements regarding these loans, although no documentation of such agreements was offered in evidence. Thus, we find sufficient evidence supporting the findings that Superior paid Champion's bills, expenses and employee salaries, and that Champion had no checking account.

As to the finding of centralized accounting, however, the testimony indicated that the two companies had separate accountants, filed separate tax returns, and kept separate records. Although Champion used Superior's purchase order forms, the testimony indicated that a "c" was included in the purchase order number for Champion purchases to distinguish them from Superior purchases. The purchase order sent to Electrodyne was a preprinted form of Superior's with Champion's name handwritten next to Superior's name at the top of the form. This purchase order contained the number 4661–c. Thus, we find no evidence supporting the finding that Superior and Champion had centralized accounting.

We find no evidence that any Superior employee rendered services on behalf of Champion or that any Champion employee rendered services on behalf of Superior. The testimony did indicate that Superior performed services for Champion, such as repairs to two of the masts, but this evidence does not support the finding that these services were performed on behalf of Champion.

There is evidence supporting the finding that Superior purchased the inventory used by Champion. Testimony showed that Superior supplied Champion with preprinted forms bearing Superior's name and address for use in purchasing. Superior also paid Electrodyne for the masts manufactured under the purchase order involved in this case. This is sufficient evidence to support the trial court's finding.

Although we have found insufficient evidence supporting some of the trial court's findings of fact regarding the relationship between Superior and Champion, we believe sufficient evidence supports the trial court's conclusion that the two companies operated as a single business enterprise. The evidence showed that a Superior stockholder formed Champion, Superior provided office space for Champion in the same building as Superior's offices, Superior provided Champion with all forms necessary for business, performed services for Champion, and that Superior paid all of Champion's bills, expenses, and employee salaries. In our opinion, this is sufficient to show that the two corporations did not operate as "separate entities but rather integrate[d] their resources to achieve a common business purpose...." *Paramount Petroleum*, 712 S.W.2d at 536. Thus, the trial court did not err in holding Superior and Champion jointly and severally liable. We overrule points seven and eight.

In point of error nine, appellants claim the trial court erred in allowing appellee to introduce evidence of appellee's damages based on breach of contract and lost profits when those issues were not properly raised in appellee's pleading. As under points of error five and six, appellants contend that appellee alleged only a claim on a sworn account and thus, the trial court erred in awarding damages for Mast 1 and 4. We held under these points that evidence supported a finding of delivery of Mast 1 and thus, the trial court properly awarded damages for this mast. We further held that no evidence supported a finding of delivery or passage of title of Mast 4 and thus, the trial court erred in awarding damages for this mast. To determine whether these two masts satisfied the requirements of a sworn account claim, the trial court had to consider evidence regarding delivery or passage of title. Because we have held that the trial court erred in awarding damages for Mast 4, we need not consider whether the trial court also erred in admitting evidence regarding damages for this mast.

In point of error ten, appellants claim the trial court erred in allowing introduction and admission of appellee's exhibits 5–22, a videotape of Mast 3 and photographs of Mast 3 and other masts during fabrication. To obtain reversal of a judgment based on error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that the error was "calculated to cause and probably did cause rendition of an improper judgment." TEX.R.APP.P. 81(b)(1). Reversible error usually does not occur in connection with rulings on evidentiary questions unless the appellant demonstrates "that the whole case turns on the particular evidence admitted or excluded." *Shenandoah Assoc. v. J & K Properties, Inc.*, 741 S.W.2d 470, 493 (Tex.App.—Dallas 1987, writ denied).

Appellants first contend that plaintiff's exhibit 5 was never formally admitted by the trial court and should not be considered on appeal by this court. Even if we find that exhibit 5 was properly admitted, appellants further complain that admission of exhibits 5–22 was error because appellee never supplied these materials to appellants in response to discovery requests.

We find no reversible error in connection with exhibit 5. Taking appellants' objections under advisement, the trial court allowed appellee to offer exhibit 5, the video portion of a videotape of Mast 3 and of Anderson making certain measurements of this mast. We agree that the record does not show a formal ruling by the trial court admitting this exhibit. Even if this lack of formal admission into evidence were error, it is not reversible error. This evidence was cumulative of other evidence in the record and did not cause rendition of an improper judgment.

Furthermore, we find no error in the admission of these exhibits under Rule 166b. Rule 166b requires a party who has responded to a discovery request, to supplement the response if he obtains information that renders his response to the discovery request incomplete. *See* TEX. R.CIV.P. 166b(6)(a). Appellants' only discovery request to appellee was its first set of interrogatories and request for production. The only request for documentary evidence is question 4(c) which requests documentary evidence or instruments proving acceptance of goods. We agree with appellee that exhibits 5–22 are not responsive to this request. Exhibit 5 was a videotape of Anderson measuring Mast 3. Exhibits 6–22 consisted of photographs of Mast 3 and previous masts in various stages of fabrication. Thus, we find no error by the trial court in admitting these exhibits. We overrule point of error ten.

In point of error eleven, appellants contend the trial court erred in holding that appellant Champion should take nothing on its counterclaim of breach of express and implied warranties. As claimed under points of error one and two, appellants claim Masts 2 and 3 were not conforming goods and thus, the trial court should have awarded Champion damages for its claims of breach of warranty. Because we have upheld the trial court's finding that these masts were conforming goods, we likewise find no error in the trial court's finding that Champion should take nothing on its counterclaim. We overrule point of error eleven.

Because we have found no evidence supporting the trial court's award of damages for Mast 4, we modify the judgment to delete $53,000.00 from the total damages of $99,500.00 awarded to appellee. Thus, the judgment is modified to reflect a total award of $46,500.00. Except as modified, we affirm the remainder of the judgment.