**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed September 1, 2022.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00549-CV

## NATIONAL CLEANERS, LLC, Appellant

## V.

## SANFORD ARON AND STEPHEN PHEIGARU, Appellees

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2018-38178-A

## M E M O R A N D U M   O P I N I O N

Appellant National Cleaners, LLC appeals a final order dismissing its claims against appellees Sanford Aron and Stephen Pheigaru under Texas Rule of Civil Procedure 91a. The sole claim at issue on appeal is National Cleaners' Texas Uniform Fraudulent Transfer Act ("TUFTA") claim. Because we conclude that Aron and Pheigaru failed to establish that the TUFTA claim has no basis in law or

fact, we reverse the trial court's order dismissing that claim and remand for further proceedings.

Construed liberally, National Cleaners' live pleading asserted six additional claims against Aron and Pheigaru—breach of contract, promissory estoppel, Property Code, fraud, negligent misrepresentation, and DTPA. Because National Cleaners did not argue against dismissal of those claims in the trial court, and because it does not challenge the order as to those claims in our court, we consider those claims abandoned as to Aron and Pheigaru. Accordingly, we affirm the order insofar as it dismisses those claims.

## Background

National Cleaners alleged that it signed a lease agreement with the Shops at Harper Crossing I, LLC ("Harper Crossing"), a company purportedly owned and controlled by Aron and Pheigaru. The lease agreement provided that Harper Crossing would build out a suite in the shopping center in preparation for National Cleaners' occupancy. The lease term would begin thirty days after Harper Crossing turned over occupancy, which was expected to occur in March 2017. Through a series of delays, however, the anticipated occupancy date was extended by several months. National Cleaners discovered later that Harper Crossing had built out the suite at issue but allowed another tenant to occupy it. Harper Crossing assured National Cleaners that it would begin buildout of a different suite, though the lease agreement was not amended to reflect this change.

National Cleaners sent a letter to Harper Crossing inquiring about the status of the lease because it had not received notice of occupancy. Over one month passed, and still no suite had been made available to National Cleaners. The parties met to discuss mutual termination of the lease agreement, but they were unable to agree on termination terms. Shortly after that meeting, Harper Crossing notified National

2

Cleaners that: (1) National Cleaners had defaulted on the lease; (2) the lease was therefore terminated; and (3) National Cleaners' security deposit and pre-paid rent would not be refunded.

National Cleaners sued Harper Crossing for breach of contract, promissory estoppel, Property Code violations, fraud, negligent misrepresentation, and DTPA violations. While the lawsuit was pending, Harper Crossing allegedly sold the shopping center to an unnamed buyer. After National Cleaners discovered the sale, it added a TUFTA claim to its live pleading and joined Aron and Pheigaru as defendants. National Cleaners added the following factual allegation to its second amended petition:

> While this lawsuit was pending, Shops at Harper Crossing I, LLC sold its only asset, the shopping center made the basis of this lawsuit. On information and belief, the proceeds of that sale were distributed to its equity holders, Sanford Aron and Stephen Pheigaru. That distribution was made without satisfying Plaintiff's claim. As a result, the transfer was a fraudulent transfer, and Sanford Aron and Stephen Pheigaru should be individually liable to the extent of said fraudulent transfer.

National Cleaners also added these allegations in support of its fraudulent transfer claim:

> 35. Shops at Harper Crossing I, LLC sold the shopping center during the pendency of this lawsuit, and on information and belief, distributed the proceeds to Sanford Aron and Stephen Pheigaru.
>
> 36. The transfer was made to avoid Plaintiff's collection of any amount awarded to Plaintiff as a result of this cause. Defendant made these transfers with the intent to hinder, delay, or defraud Plaintiff from obtaining the collection of the amounts due to Plaintiff. Such transactions are fraudulent, pursuant to TEX. BUS. & COM. CODE §§ 24.005, 24.006. These transfers were made to insiders as defined by TEX. BUS. & COM. CODE § 24.002 because Shops at Harper Crossing I, LLC is owned and/or controlled by Sanford Aron and Stephen Pheigaru.

37. Shops at Harper Crossing I, LLC was, on information and belief, insolvent based on the transfers of the assets to Sanford Aron and Stephen Pheigaru.

38. The transfers are fraudulent as to Plaintiff, and the transfers to Sanford Aron and Stephen Pheigaru fall squarely within the provisions of the Texas Uniform Fraudulent Transfer Act, including, but not limited to Sections 24.005 and 24.006.

39. Plaintiff requests that a judgment be granted in its favor against Sanford Aron and Stephen Pheigaru for the monies and assets that were transferred to them.

There were no exhibits attached to National Cleaners' second amended petition.

Appellees Aron and Pheigaru filed a rule 91a motion to dismiss, asserting that all of National Cleaners' claims against them lacked a legal or factual basis. Appellees identified each of National Cleaners' claims and specifically stated why they contended each claim fails under rule 91a. Although National Cleaners opposed the motion, it responded only to the TUFTA claim. Thus, we limit our discussion to that claim.[1]

In their motion to dismiss, appellees asserted that National Cleaners' live pleading contained "threadbare recitals" of the elements of a fraudulent transfer claim supported by "mere conclusory statements," which does not suffice to support such a claim. Appellees' arguments included that: (1) National Cleaners was attempting to collect on a judgment that it had not yet secured; (2) the transfer of the shopping center was to an unnamed third party, and National Cleaners did not allege that the property sale was fraudulent or that Harper Crossing did not receive a

---

[1] In its trial court response to the rule 91a motion, National Cleaners asserted that its only claim against Aron and Pheigaru was under TUFTA, and therefore the part of the rule 91a motion seeking to dismiss other claims against them was "moot" and "not relevant." The trial court's order granting rule 91a relief dismissed "all claims" against Aron and Pheigaru. On appeal, National Cleaners does not argue that the trial court erroneously dismissed any claims other than the TUFTA claim.

4

reasonable value for the sale; (3) National Cleaners did not allege any details about Harper Crossing's financial condition or provide any information about the distribution of the proceeds from the sale of the shopping center; (4) National Cleaners did not identify what remedy it would seek from appellees; and (5) National Cleaners did not and could not show that appellees had the requisite fraudulent intent.

In its response, National Cleaners argued that it alleged sufficient facts to support its fraudulent transfer claim against appellees. National Cleaners additionally argued that if appellees claimed to lack sufficient notice of the basis of the TUFTA claim, they "should have asserted special exceptions."

Appellees replied and asserted that National Cleaners' TUFTA claim could only be against Harper Crossing because the individual defendants were not "debtors." Appellees contended that they had "to guess what transaction [it] is that purportedly gives rise" to a fraudulent transfer claim. Specifically, they asserted that National Cleaners failed to allege that:

> (1) The Individual Defendants were debtors; (2) the Individual Defendants transferred any identifiable property; (3) that was made by the Individual Defendants with their actual intent to hinder, delay or defraud any creditor of the Individual Defendants; (4) without receiving a reasonably equivalent value in exchange; and (A) the Individual Defendants were about to engage in business for which the remaining assets of the Individual Defendants were unreasonably small, or (B) the Individual Defendants intended to incur debts beyond the Individual Defendants ability to pay them as they came due.

In still another responsive filing, National Cleaners explained that a fraudulent transfer judgment may be entered against the recipient of such a transfer.[2] National

---

[2] *See* Tex. Bus. & Com. Code § 24.009(b) (permitting a judgment for a fraudulent transfer against a creditor to be entered against the first transferee of the asset or the person for whose benefit the transfer was made).

Cleaners emphasized that, in stating its fraudulent transfer claim, it pleaded, "Plaintiff requests that a judgment be granted in its favor against Sanford Aron and Stephen Pheigaru for the monies and assets that were transferred to them."

The trial court granted appellees' rule 91a motion to dismiss, ordering all of National Cleaners' claims against them dismissed. National Cleaners moved to sever all claims against appellees, which the trial court granted, making the dismissal order final.

National Cleaners timely appealed.

### Analysis

National Cleaners argues in one issue that the trial court erroneously granted appellees' motion to dismiss under rule 91a because its TUFTA claim has a basis in law and fact.

### A. Standard of Review

Under Texas Rule of Civil Procedure 91a, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id.* A cause of action has no basis in fact if "no reasonable person could believe the facts pleaded." *Id.* A motion to dismiss must clearly identify each cause of action to which it is addressed and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both. Tex. R. Civ. P. 91a.2.

We review de novo whether a cause of action has any basis in law or fact; "the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *see Cooper v. Trent*, 551

S.W.3d 325, 329 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). We look solely to the pleadings and any attachments to determine whether the dismissal standard is satisfied. *Cooper*, 551 S.W.3d at 329. To determine if the cause of action has a basis in law or fact, we construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* In doing so, we apply the fair-notice standard of pleading. *Id.*; *see also* Tex. R. Civ. P. 45. To survive a rule 91a challenge to its pleadings, however, a plaintiff must make more than "threadbare allegations of the elements of [its] cause of action, supported by mere conclusory statements." *Ruth v. Crow*, No. 03-16-00326-CV, 2018 WL 2031902, at *5 (Tex. App.—Austin May 2, 2018, pet. denied) (mem. op.); *see Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex. App.— Houston [14th Dist.] 2015, pet. denied). "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Cap.*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

**B. TUFTA**

Consistent with its purpose to prevent debtors from defrauding creditors by placing assets beyond creditors' reach, TUFTA provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property. *See* Tex. Bus. & Com. Code § 24.008(a); *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016); *Wohlstein v. Aliezer*, 321 S.W.3d 765, 776 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Act delineates the types of transfers and obligations that are fraudulent; enumerates the remedies available to a creditor; prescribes the measure of liability of a transferee; and lists defenses and protections afforded a transferee. *See* Tex. Bus. & Com. Code. §§ 24.005-.006, 24.008-.009.

A transfer is fraudulent as to a creditor if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." *See id.* § 24.005(a).[3] In determining actual intent under section 24.005(a)(1), TUFTA provides a list of eleven, nonexclusive indicia of fraudulent intent, including transfer to an insider, concealment of the transfer, debtor-involved litigation prior to transfer, transfer of "substantially all" of the debtor's assets, and insolvency of the debtor shortly after the transfer. *Id.* § 24.005(b). "Evidence of a single 'badge of fraud' does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud. Intent to defraud is ordinarily a fact question." *Janvey*, 487 S.W.3d at 566-67.

Section 24.008 enumerates remedies to which a defrauded creditor may be entitled, including avoidance of a transfer. Tex. Bus. & Com. Code § 24.008. To the extent a transfer is voidable, the creditor may recover a money judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. *Id.* § 24.009(b). The judgment may be rendered against the first

---

[3] Under section 24.005 of TUFTA:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com. Code § 24.005.

transferee, the person for whose benefit the transfer was made, or any subsequent transferee other than a good faith transferee who takes for value or from any subsequent transferee. *Id.*

## C. Application

To obtain relief under TUFTA, a plaintiff must prove: (1) that it is a creditor, i.e., has a claim against; (2) debtors; (3) that the debtors transferred assets after, or a short time before, the plaintiff's claim arose; and (4) that those transfers were made with the intent to hinder, delay, or defraud the plaintiff creditor. *See Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204-05 (Tex. App.— Houston [1st Dist.] 2014, pet. denied) (citing Tex. Bus. & Com. Code § 24.005(a)(1)). Construing National Cleaners' petition liberally, we conclude its TUFTA claim has a basis in law and in fact.

### 1. *National Cleaners' TUFTA claim has a basis in law*.

The claim has a basis in law because the "allegations, taken as true, together with inferences reasonably drawn from them," would entitle National Cleaners to relief. *See* Tex. R. Civ. P. 91a.1. National Cleaners pleaded each element of a claim under TUFTA by alleging that Harper Crossing, a company against whom it had filed suit, sold its only asset during the pendency of the lawsuit and distributed the proceeds from the sale to Aron and Pheigaru, who are alleged to be equity owners and "insiders" who "controlled" Harper Crossing. National Cleaners alleged that doing so left Harper Crossing insolvent and unable to satisfy any judgment National Cleaners might obtain through its lawsuit against Harper Crossing. And National Cleaners alleged that Harper Crossing sold the shopping center and distributed the proceeds to appellees with the intent to hinder, delay or defraud National Cleaners. In fact, appellees note these allegations in their rule 91a motion to dismiss:

- "the sale of the shopping center by [Harper Crossing] created the only cash that [Harper Crossing] has on hand or available to it";
- "distribution of any proceeds . . . left [Harper Crossing] insolvent";
- "Aron and Pheigaru are insiders of [Harper Crossing]";
- "Aron and Pheigaru are the only equity holders of [Harper Crossing]";
- "there is [sic] not sufficient funds available in or to [Harper Crossing] to satisfy actual final claim by [National Cleaners], if ever"; and
- "[Harper Crossing] intended to hinder, delay, or defraud [National Cleaners].

Contrary to appellees' contentions otherwise, these allegations, if true, would establish the required elements under section 24.005. *See* Tex. Bus. & Com. Code § 24.005(a)(1); *Nwokedi*, 428 S.W.3d at 204-05.

In their rule 91a motion, appellees argued that National Cleaners' pleading contains "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are insufficient to support a TUFTA claim. For example, appellees pointed out that National Cleaners did not contend that Harper Crossing's sale of the shopping center was fraudulent or name the buyer in that transaction.

However, construing National Cleaners' pleading in its favor, its TUFTA claim against appellees is based on not only the sale of the property itself but on Harper Crossing's distribution or transfer of the shopping center sale proceeds to appellees. TUFTA defines "transfer" to include the "payment of money"; thus, Harper Crossing's alleged distribution of the proceeds from the property sale to appellees qualifies as a transfer under TUFTA. *See* Tex. Bus. & Com. Code § 24.002(12) (defining "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a

10

lien or other encumbrance"). And National Cleaners alleged that appellees were "insiders" under TUFTA because they "controlled" Harper Crossing. *See id.* § 24.002(7)(B)(iii) (defining "insider" in the context of a debtor corporation as including "a person in control of the debtor").

In their motion, appellees also urged that the alleged distribution of an "unnamed amount or defined proceeds" is conclusory because there is nothing in National Cleaners' petition regarding the "actual financial capabilities" of Harper Crossing. But, as noted above, in the background section of its live pleading, National Cleaners alleged that Harper Crossing sold its *only asset*, the shopping center. In stating its TUFTA claim, National Cleaners alleged that distributing the proceeds of this sale to appellees left Harper Crossing insolvent. Thus, there is some information about Harper Crossing's financial capabilities, in that National Cleaners alleged that Harper Crossing (1) had only a single asset—the shopping center—and (2) became insolvent when it sold this asset and distributed the sales proceeds to appellees. Although these allegations are not as detailed as they might be, they are not conclusory.

Next, appellees contended that National Cleaners failed to allege that Harper Crossing "did not receive reasonable value" for the for the sale of the shopping center. But an allegation that a debtor transferred assets without receiving reasonably equivalent value is not always necessary to support a TUFTA claim. A transfer may be fraudulent if the debtor made the transfer either "with actual intent to hinder, delay, or defraud any creditor of the debtor" *or* "without receiving a reasonably equivalent value in exchange for the transfer." *Id.* § 24.005(a)(1), (2). National Cleaners alleged that Harper Crossing made the subject transfer "with the intent to hinder, delay, or defraud" National Cleaners, relying on TUFTA subsection 24.005(a)(1); it did not rely on subsection 24.005(a)(2) in support of its fraudulent

11

transfer claim. That National Cleaners did not allege that Harper Crossing failed to receive a reasonable value in exchange for the shopping center does not support dismissal of the claim on rule 91a grounds.

Appellees further asserted that National Cleaners failed to sufficiently plead fraudulent intent. To state a TUFTA claim, the debtor's fraudulent intent must be alleged,[4] and appellees acknowledge that, as the claim is pleaded, Harper Crossing is the debtor. National Cleaners alleged that: (1) Harper Crossing's only asset was the shopping center; (2) Harper Crossing sold this asset during the pendency of the lawsuit and transferred the proceeds of the sale to appellees; (3) the transferees— i.e., appellees—were insiders because they controlled Harper Crossing; and (4) Harper Crossing became insolvent because of this transfer. Thus, construing its pleading liberally in its favor, National Cleaners alleged facts supporting several "badges of fraud," including:

- "the transfer . . . was to an insider";
- "before the transfer was made . . . , the debtor had been sued or threatened with suit";
- "the transfer was of substantially all of the debtor's assets"; and
- "the debtor was insolvent or became insolvent shortly after the transfer was made . . . ."

*Id.* § 24.005(b)(1), (4), (5), (9). Because appellees are alleged to control Harper Crossing, National Cleaners has sufficiently alleged Harper Crossing's fraudulent intent in distributing the sale proceeds to appellees. National Cleaners thus adequately pleaded fraudulent intent.

---

[4] *See* Tex. Bus. & Com. Code § 25.005(a) (explaining that transfer made by debtor is fraudulent when, *inter alia*, the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor").

Appellees also complained that National Cleaners is "truly only attempting to try to collect on a judgment they have not bothered to get." To be entitled to recovery or relief under TUFTA, however, a party need not have secured a judgment. National Cleaners must establish that it is a "creditor," which means that National Cleaners must be a "person who has a claim." *See id.* § 24.002(4). TUFTA broadly defines "claim" to include "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." *Id.* § 24.002(3). Although National Cleaners' claim against Harper Crossing is disputed and has not been reduced to judgment, National Cleaners nonetheless has a "claim" because it filed suit against Harper Crossing seeking money damages for breach of the lease. Tort claimants, such as National Cleaners, are entitled to file causes of action under TUFTA based upon pending, unliquidated tort claims. *See Nwokedi*, 428 S.W.3d at 198, 203-05; *Blackthorne v. Bellush*, 61 S.W.3d 439, 443-44 (Tex. App.—San Antonio 2001, no pet.). Thus, under TUFTA's broad terms, National Cleaners' pleading satisfies the statutory requirement that it be a creditor.

Finally, appellees argued the pleading is deficient in law because National Cleaners "has not alleged what remedy it would seek" from them. And on appeal, appellees assert that National Cleaners is attempting to pierce the corporate veil without having pleaded such a claim: "Without asserting a cause of action for alter ego or piercing the corporate veil, Appellant contends that Appellees should be liable for the actions of [Harper Crossing]."

We disagree. National Cleaners seeks a judgment in its favor against appellees "for the monies and assets that were transferred to them." "The fundamental remedy for a creditor who establishes a fraudulent transfer is recovery of the property from the person to whom it has been transferred." *Challenger*

13

*Gaming Sols., Inc. v. Earp*, 402 S.W.3d 290, 294 (Tex. App.—Dallas 2013, no pet.). TUFTA section 24.008, entitled "Remedies of Creditors," states that a creditor may obtain, "subject to applicable principles of equity and in accordance with applicable rules of civil procedure . . . an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property . . . [or] any other relief the circumstances may require." Tex. Bus. & Com. Code § 24.008. "This last option is quite broad." *Challenger Gaming Sols.*, 402 S.W.3d at 294 (citing *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 934 (Tex. App.—Houston [1st Dist.] 1993, no writ)). Further, as to voidable transfers under section 24.008(a)(1), the creditor may recover a judgment against the first transferee of the asset or the person for whose benefit the transfer was made. Tex. Bus. & Com. Code Code § 24.009(b). "If a district court is not allowed to order that the proceeds be turned over to a creditor who has been unable to collect a judgment because the debtor has fraudulently transferred assets to another individual, then the fraudulent-transfer statute would lose all its meaning." *Stokes v. Verris*, No. 03-02-00802-CV, 2004 WL 1065756, at *9 (Tex. App.—Austin May 13, 2004, pet. denied) (mem. op.).

2.     *National Cleaners' TUFTA claim has a basis in fact*.

Additionally, we conclude that National Cleaners' TUFTA claim has a basis in fact because the facts alleged are not such that no reasonable person could believe them. Tex. R. Civ. P. 91a.1. It is quite plausible that persons alleged to own and control an LLC might seek to shield assets to evade responsibility for a potential judgment against the LLC. *See Nwokedi*, 428 S.W.3d at 198-99, 204-09 (LLC's insider transferred insurance proceeds to avoid paying contractor after contractor sued LLC to recover for work contractor performed).

*         *         *

14

In sum, we conclude that National Cleaners has stated a fraudulent transfer claim against Harper Crossing and appellees and that it has sufficiently alleged that appellees were the first transferee of the fraudulently transferred asset or otherwise benefitted from the distribution. As such, National Cleaners gave appellees fair notice of its fraudulent transfer claim, how they were involved in the transaction, and the remedy it sought against them. *See* Tex. Bus. & Com. Code §§ 24.005(a)(1), 24.008; *Stokes*, 2004 WL 1065756, at *9. Accordingly, the trial court erred by dismissing National Cleaners' fraudulent transfer claim against appellees under rule 91a.

We sustain National Cleaners' sole issue.

## Conclusion

We reverse that portion of the trial court's order dismissing National Cleaners' TUFTA claim against appellees. We affirm the order to the extent it dismisses the other claims National Cleaners asserted in its live pleading against appellees. We remand for further proceedings consistent with this opinion.


/s/ Kevin Jewell
   Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.